**CARRIERS INSURANCE COMPANY**

v.

**AMERICAN POLICYHOLDERS' INSURANCE CO.**

v.

**MERRILL'S RENTAL SERVICE, INC.**

Supreme Judicial Court of Maine.

July 23, 1979.

William R. Laney (orally), Carl R. Wright, Skowhegan, for plaintiff.

Rudman, Winchell, Carter & Buckley by Gene Carter (orally), Robert W. Kline, Bangor, for defendant and third-party plaintiff.

Bennett, Kelly & Zimmerman, P.A. by John N. Kelly, Portland, for Merrill's Rental.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

DELAHANTY, Justice.

This action was brought in the Superior Court, Kennebec County, by the plaintiff, Carriers Insurance Company (Carriers), seeking contribution from the defendant, American Policyholders' Insurance Co. (American). The parties joined issue upon whether and to what extent American was required to contribute to a settlement made by the plaintiff. Upon an agreed statement of facts, the presiding Justice found for Carriers, and American has appealed. We deny the appeal.

During April of 1963, Cummings Bros. (Cummings) entered into a contractual agreement with Merrill's Rental Service, Inc. (Merrill's) whereby it leased certain motor vehicles from Merrill's. Pursuant to the lease and for Cummings' benefit, Merrill's agreed to provide insurance coverage—both personal injury and property damage—for its vehicles while they were being operated by Cummings' employees. In 1971, this personal injury liability coverage which Merrill's obtained through Carriers stood at approximately $3,000,000 with $500,000 of property damage coverage. In the meantime, Cummings independently procured $250,000 of liability insurance through the defendant, American.

In March of 1972, one of Cummings' employees, while negligently driving a vehicle leased from Merrill's, collided with a Lincoln Continental killing the driver and ex-

tensively damaging his automobile. Carriers, acting in good faith and in the best interests of its insured, settled a wrongful death claim for $200,000 and a property damage claim for approximately $8,000. Both prior and subsequent to the settlement, American refused Carriers' demand for contribution.[1] Thereafter, Carriers instituted the present action and received a judgment against the defendant for approximately $104,000. Both Carriers and American had "other insurance" clauses in their insurance policies. Carriers' contract stated:

> OTHER INSURANCE
>
> If there is other insurance against an occurrence covered by this policy, the insurance afforded by this policy shall be deemed *excess insurance* over and above the applicable limits of all such other insurance. (emphasis supplied.)

American's policy contained an endorsement specifically covering "hired automobiles" which provided:

> OTHER INSURANCE
>
> This insurance shall be *excess insurance* over any other valid and collectible insurance for Bodily Injury Liability, for Property Damage Liability and for Automobile Medical Payments. (emphasis supplied.)

Faced with these competing clauses, the presiding Justice disregarded them as "mutually repugnant." American assigns this as error and insists that its clause should be given preference over Carriers'.

## I

We begin our discussion by acknowledging the utter confusion that pervades the entire realm of "other insurance" clauses. *See Insurance Company of Texas v. Employers Liability Assurance Corp.,* 163 F.Supp. 143, 145 (S.D.Cal.1958). Originat-

ing in the property insurance field, these clauses were designed to prevent fraudulent claims induced by overinsuring. With automobiles, however, the fear of death or injury was in itself sufficient to deter specious accidents. The original purpose of other insurance clauses has little relevance, therefore, to automobile liability insurance other than to limit, reduce, or avoid an insurer's loss in those cases where there is multiple coverage. *See* Comment, *"Other Insurance" Clauses: The Lamb-Weston Doctrine,* 47 Or.L.Rev. 430 (1968); Note, *Concurrent Coverage in Automobile Liability Insurance,* 65 Colum.L.Rev. 319 (1965). However, these clauses violate no public policy and in the absence of a statute to the contrary they will be given effect, even if the insured is unaware of the existence of the other insurance. 8 D. Blashfield, Automobile Law and Practice § 345.10 (3rd ed. 1966).

There are three basic types of other insurance clauses which regulate how liability is to be divided when multiple coverage exists. The first, a "pro-rata" clause, limits the liability of an insurer to a proportion of the total loss. The second, an "escape" clause, seeks to avoid all liability. The third, an "excess" clause, the provision used in the present case, provides that the insurance will only be excess. *See* 8 J. Appleman, Insurance Law and Practice § 4911 (Cum.Supp.1973); 7 Am.Jur.2d *Automobile Insurance* §§ 200–202 (2d ed. 1963).

No problems arise as long as only one policy contains an other insurance clause since the particular provision can be given effect as written. Complications and conflicts occur where more than one applicable policy contains an other insurance clause. In that situation, the court is faced with a battle of the clauses.[2]

---

1. *Butters v. Kane,* Me., 347 A.2d 602 (1975), is plainly distinguishable from the case at bar. There, a releasee sought contribution against one of two releasors after entering into a settlement with them. The Court held that "the making of a settlement without any express reservation of rights constitutes complete accord and satisfaction of all claims of *immediate parties to the settlement* arising out of the same accident." *Id.* at 604. (emphasis supplied.) Here, by contrast, American eschewed any role in the settlement. Accordingly, American did not set up the affirmative defenses of either accord and satisfaction or release. *See* M.R.Civ.P. 8(c).

2. Some of the more common interchanges have been commented upon: excess clause v. pro-

In the case at bar, each policy, in virtually identical language, states that it will be excess over any other valid and collectible insurance. Any attempt at a literal reconciliation of the clauses involves hopeless circular reasoning. One clause cannot be given effect as "excess" unless the other is considered "primary." Since both claim to be excess, neither could operate as primary and hence neither could take effect as excess. Taken to its *reductio ad absurdum* conclusion, even though each insurer concedes that its policy would have covered the loss in the absence of the other, where there is double coverage both would escape liability, a result which neither party advocates. As well stated in *State Farm Mutual Insurance Co. v. Travelers Insurance Co.,* 184 So.2d 750, 753–54 (La.App.1966) (Tate, J., concurring),

> [i]ndeed, there is actually no way by logic or word-sense to reconcile two such clauses, where each policy by itself can apply as a primary insurer, but where the clause in each policy nevertheless attempts to make its own liability secondary to that of any other policy issued by a similar primary insurer: For then the primary and (attempted) secondary liability of each policy chase the other through infinity, something like trying to answer the question: Which came first, the chicken or the egg?

Faced with this logical logjam, a number of different and conflicting methods have at various times been used to determine which policy is primary and hence which should bear the brunt of the loss. Thus, it has been stated that the primary policy is the one: covering the tortfeasor, *Employers*

*Mutual Liability Insurance Company of Wisconsin v. Pacific Indemnity Company,* 167 Cal.App.2d 369, 334 P.2d 658 (1959); issued prior in time, *Automobile Insurance Company of Hartford v. Springfield Dyeing Company,* 109 F.2d 533 (3rd Cir. 1940); insuring the vehicle's owner, *Farm Bureau Mut. Automobile Ins. Co. v. Preferred Acc. Ins. Co.,* 78 F.Supp. 561 (W.D.Va.1948); whose policy covered the particular loss more specifically, *Trinity Universal Insurance Co. v. General Accident, Fire & Life Assurance Corp.,* 138 Ohio St. 488, 35 N.E.2d 836 (1941); or whose other insurance clause is written in more general terms, *Zurich General Accident & Liability Insurance Co. v. Clamor,* 124 F.2d 717 (7th Cir. 1941).

Seizing on one of these approaches, American argues that Carriers' policy should be construed as primary based upon minute differences in the language of the excess insurance clauses. We prefer not to engage in such semantic microscopy. "It [merely] encourages the continuing draftsmanship battle by which insurers seek still more specific policy terms, and the end is not in sight." Note, *Concurrent Coverage in Automobile Liability Insurance, supra* at 322. Fairly read, each insurer, through its excess clause, seeks to place the initial loss on any other applicable insurance, saving for itself a role as secondary insurer.

■ As an alternative argument, American asserts that the intent of the underlying parties should be given effect. Merrill's, for valuable consideration, contractually agreed to insure Cummings.[3] Merrill's '

---

rata clause, *see* Annot., 76 A.L.R.2d 502 (1961); escape clause v. pro-rata clause, *see* Annot., 46 A.L.R.2d 1163, 1167 (1956); excess clause v. excess clause, *see* Annot., 69 A.L.R.2d 1122 (1960); excess clause v. escape clause, *see* 46 A.L.R.2d, *supra* at 1165. *See Union Ins. Co. (Mut.) v. Iowa Hardware Mut. Ins. Co.,* 175 N.W.2d 413, 415 (Iowa 1970).

**3.** In pertinent part, the lease provided:

> F. INSURANCE COVERAGE AND LIABILITY
> Subject to the following conditions, MERRILL shall provide, at its expense, insurance

coverage for its benefit and the benefit of CUMMINGS and the drivers and/or operators of CUMMINGS.

> 1. All rental units described in Schedule A including any emergency spares or other vehicles or trailers of MERRILL's used by CUMMINGS under the terms hereof will be covered, for the benefit of CUMMINGS and its operating and driving personnel:
> (a). Personal injury, [$2,990,000.00].
> (b). Property damage, $500,000.00.

> 2. CUMMINGS shall not be liable to MERRILL for any damages or injuries sus-

insurance should therefore be considered primary.

We disagree.

American's argument would be well taken were this suit simply one for breach of contract between Cummings and Merrill's. We fail, however, to see the relevance in this case of the lease agreement to which the insurers were neither parties nor beneficiaries. The only appropriate considerations are the two insurance policies through which the respective insurers and insureds manifested their contractual intent. *See Farm Bureau Mutual Insurance Co. v. Waugh,* 159 Me. 115, 188 A.2d 889 (1963). An examination of the policies issued is the single criteria for analyzing an insurer's obligations which can neither be enlarged nor diminished beyond the terms employed. *Limberis v. Aetna Casualty & Surety Co.,* Me., 263 A.2d 83 (1970). A determination of the primary insurer must turn, therefore, upon a construction of the insurance contracts and not upon a collateral agreement between an insured and a third party. *Accord, Transport Indemnity Co. v. Home Indemnity Co.,* 535 F.2d 232, 235 (3rd Cir. 1976); *Carolina Casualty Insurance Company v. Transport Indemnity Co.,* 488 F.2d 790, 794 (10th Cir. 1973); *Beattie v. American Automobile Insurance Co.,* 338 Mass. 526, 530, 156 N.E.2d 49, 51 (1959).

We perceive no methodology which is neither arbitrary nor utterly mechanical by which we could rationally resolve the enigma of which policy should be given effect over the other. Both clauses attempt to occupy the same legal status. Any construction this Court renders should attempt to maintain this status quo. This goal can be achieved only by abandoning the search for the mythical "primary" insurer and insisting instead that both insurers share in the loss. Such an approach best carries out the intent of the insurers which was to reduce or limit their liability.

There are additional benefits to adopting this rule. It would introduce certainty and uniformity into the insurance industry, discourage litigation between insurers, and enable underwriters to predict the losses of the insurers more accurately. Note, *Conflicts Between "Other Insurance" Clauses in Automobile Liability Insurance Policies,* 20 Hastings L.J. 1292, 1304 (1969). We hold that where there are conflicting excess insurance clause provisions they are to be disregarded as mutually repugnant thus rendering applicable the general coverage of each policy. This, we note, is the clear majority rule.[4]

---

tained to the rental units described in Schedule A while being used by CUMMINGS under the terms hereof if occasioned by:

(a). The negligent operation of CUMMINGS' drivers or operators while operating or driving said rental units in the scope of their employment with CUMMINGS.

4. As stated in 69 A.L.R.2d, *supra* note 2 at 1123–24,

[t]here is a growing tendency in the entire picture to reject the circular reasoning, more prevalent in an earlier day, whereby the restrictive clause of one policy will be given prior effect, or one of two policies affording coverage upon different hypotheses will be deemed "specific," and, therefore, to constitute the "primary" insurance. This rejection has been strongest in cases where the conflict has been between like "other insurance" clauses . . . .

For a partial listing of some of the more significant cases which have announced at least that conflicting excess clause provisions will be disregarded as mutually repugnant, *see Werley v. United Servs. Auto. Ass'n,* 498 P.2d 112 (Alaska 1972); *Argonaut Ins. Co. v. Transport Indem. Co.,* 6 Cal.3d 496, 99 Cal.Rptr. 617, 492 P.2d 673 (1972); *Continental Cas. Co. v. New Amsterdam Cas. Co.,* 28 Ill.App.2d 489, 171 N.E.2d 406 (1960); *State Farm Mut. Auto. Ins. Co. v. Union Ins. Co.,* 181 Neb. 253, 147 N.W.2d 760 (1967); *Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.,* 28 N.J. 554, 147 A.2d 529 (1959); *Federal Ins. Co. v. Atlantic Nat'l Ins. Co.,* 25 N.Y.2d 71, 302 N.Y.S.2d 769, 250 N.E.2d 193 (1969); *Buckeye Union Ins. Co. v. State Auto. Mut. Ins. Co.,* 49 Ohio St.2d 213, 361 N.E.2d 1052 (1977); *contra, Hartford Accident & Indem. Co. v. Transport Indem. Co.,* 242 Cal.App.2d 90, 51 Cal.Rptr. 168 (1966); *Olson v. Hertz Corp.,* 270 Minn. 223, 133 N.W.2d 519 (1965); *State Farm Mut. Auto. Ins. Co. v. Foundation Reserve Ins. Co.,* 78 N.M. 359, 431 P.2d 737 (1967). For additional cases, *see* 69 A.L.R.2d, *supra* note 2 at 1122.

## II

Having found that both policies are to be considered "primary," we are brought to the question of how should the liability be prorated where the total loss does not exceed the limits of either policy. American argues that the loss should be prorated according to the policy limits. Because Carriers provided $2,990,000 of coverage compared to only $250,000 for American, appellant contends that Carriers should bear close to ninety percent of the settlement cost. Carriers, on the other hand, argues that the loss should be shared equally between the insurers, the approach adopted by the presiding Justice.

There are three basic methods of proration. The majority rule, the one urged upon by appellant, prorates liability according to the limits contained in each policy.[5] The next, which is seldom followed, prorates on the basis of the premiums paid to each insurer.[6] Finally, there is a minority but growing number of courts which prorate the loss equally up to the limits of the lower policy,[7] the approach adopted by the court below.

Each method is grounded on the premises, often unarticulated, that on equitable principles the loss should be shared among the insurers either on the basis of the risk that they have undertaken or the benefit they have received. In its clearest expression, the majority rule has been justified on the theory that

> the burden imposed on each insurer is generally proportional to the benefit which he received, since the size of the premium is most always directly related to the size of the policy. *Lamb-Weston, Inc. v. Oregon Automobile Insurance Company, supra* note 5 at 137, 346 P.2d at 647.

On precisely these grounds, the majority rule has been criticized since "[i]t is commonly known that the cost of liability insurance does not increase proportionately with the policy limits." *Cosmopolitan Mutual Insurance Company v. Continental Casualty Co., supra* note 4 at 564, 147 A.2d at 534. Once minimum coverage has been obtained, significant supplemental coverage can be provided at only a modest increase in cost.

On the other hand, if the majority rule is less equitable than that minority approach which apportions on the basis of premiums received, it has the advantage of facile application. Unless the multiple policies cover the identical risks, there would be too many variables affecting the premiums to permit them to serve as a benchmark for an equitable adjustment. *Nationwide Mutual Insurance Company v. State Farm Mutual Automobile Insurance Company*, 209 F.Supp. 83 (N.D.W.Va.1962).

The minority rule adopted by the presiding Justice utilizes the best aspects of both approaches without the limitations. Like the majority rule, it is easy to administer. It would simply require each company to contribute equally until the limits of the smaller policy were exhausted, with any remaining portion of the loss then being paid from the larger policy up to its limits. *Nationwide Mutual Insurance Company v. State Farm Mutual Automobile Insurance Company, supra; Dairyland Insurance Company v. Drum*, 568 P.2d 459, 464 (Colo. 1977) (Carrigan, J., dissenting in part).

Unlike the majority rule, this Solomon-like approach comports with a most basic sense of justice. *See* Exodus, ch. 21, par. 35 ("When one man's ox hurts another's ox so badly that it dies, they shall sell the live ox and divide this money as well as the dead animal they shall divide equally between them.") Moreover, the majority rule un-

---

5. *See, e. g., State Farm Mut. Auto. Ins. Co. v. General Mut. Ins. Co.*, 282 Ala. 212, 210 So.2d 688 (1968); *Buckeye Union Ins. Co. v. State Auto. Mut. Ins. Co., supra* note 4; *Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.*, 219 Or. 110, 346 P.2d 643 (1959); *Pacific Indem. Co. v. Federated Am. Ins. Co.*, 82 Wash.2d 412, 511 P.2d 56 (1973).

6. *Insurance Co. of Tex. v. Employers Liab. Assur. Corp., supra.*

7. *See, e. g., Ruan Transport Corp. v. Truck Rentals, Inc.*, 278 F.Supp. 692 (D.Colo.1968); *Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc.*, 259 Md. 354, 269 A.2d 826 (1970); *Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., supra* note 4.

fairly discriminates against the larger policy by apportioning the loss in proportion to the respective policy limits, utterly forgetting that both insurers, by their contracts, have in fact agreed to cover a loss up to the limits of the lesser policy. Until that point is reached, the majority rule amounts to no more than an unacceptable subsidy from the high-coverage to the low-coverage carrier. We are in complete accord with the presiding Justice when he adopted the persuasive opinion of Judge Doyle in *Ruan Transport Corp. v. Truck Rentals, Inc., supra* note 7 at 696.

> The majority method of prorating operates inequitably in its differentiating treatment of the high-loss and low-loss insurer. In return for a greater premium the insurer providing higher coverage has undertaken to protect the insured against accidents involving high losses. Yet because of this undertaking to protect against high loss the larger insurer is in an unfavorable position vis-a-vis the other insurer even in cases of low loss, since under the majority method of prorating the insurer affording the greater maximum coverage pays the greater segment of any loss incurred, regardless of the amount of the loss. This seems inequitable since both insurers have equally undertaken to insure against the low-loss accident.
>
> The majority rule would hardly encourage an insurer from increasing its coverage where it is aware that there is a lesser policy. It would increase the insurer's potential liability not only in the high-risk situation which the additional premiums are presumably meant to recompense, but it would have the untoward effect of increasing liability in the more likely to occur low-risk situation. Carried to its extreme, it would further increase the cost of additional insurance thereby reducing the likelihood that an insured would choose such coverage. *See Dairyland Insurance Company v. Drum, supra,* (Carrigan, J., dissenting in part). The Court would be reluctant to adopt a rule which would seemingly have little social utility.

For all of the aforesaid reasons, the presiding Justice correctly prorated the loss between Carriers and American.

Accordingly, the entry shall be:

Appeal denied.

Judgment affirmed.

WERNICK, J., did not sit.