**PROGRESSIVE CASUALTY INSURANCE COMPANY,**
**Plaintiff,**

v.

**TRAVELERS INSURANCE COMPANY, Defendant.**

**Civ. No. 89–0125 P.**

United States District Court,
D. Maine.

April 9, 1990.

---

**16**

John C. Walker, Portland, Me., for plaintiff.

Martica S. Douglas, Richard D. Hewes, Hewes, Douglas, Whiting & Quinn, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

This diversity case asks the Court to apportion the costs of defending a lawsuit between two insurance companies, each of whom provided insurance coverage to the defendant in the underlying negligence action. Plaintiff insured the owner of an automobile that was involved in an accident, and Defendant insured the driver of the same automobile. Each policy contained an "other insurance" clause which purported to apportion losses where another insurance policy covered the same risk. Plaintiff brought an action seeking to recover from Defendant the legal expenses it had incurred defending the underlying negligence action. Both parties move for summary judgment, each contending that the undisputed facts demonstrate that judgment should be entered in its favor.

Plaintiff argues that the Court should disregard the "other insurance" clauses as mutually repugnant. Plaintiff contends that once the clauses are disregarded, each insurer is primarily liable for the loss and that the Court should therefore prorate the costs of defense in proportion to the respective policy limits. Defendant argues that the majority rule makes Plaintiff, as insur-

er of the owner of the car, the primary insurer and that Plaintiff is thus liable for all the costs of defense. Alternatively, Defendant argues that it fulfilled any duty to defend that it may have been under by hiring co-counsel and ultimately assuming exclusive control of the defense.

The Court holds that in this situation, Plaintiff's policy provides primary coverage and Defendant's policy excess coverage. Plaintiff, as the primary insurer, has the principal duty to defend the insured, and thus Plaintiff is not entitled to recover from Defendant any of the costs it expended in defending the underlying action.

## I. *Facts*

The following recitation of facts is, unless otherwise indicated, uncontroverted. On February 27, 1987 Suzanne Godfroid filed suit against Deborah Pendleton, alleging that Pendleton's negligent operation of an automobile caused her to sustain personal injuries. The car driven by Pendleton was owned by Richard N. Mitchell, who was insured by Plaintiff. Pendleton was covered by Plaintiff's policy because she was driving the insured vehicle. *See* Joint Stipulations of Facts, Exhibit A. Pendleton was also covered by Defendant's policy, which was issued to Pendleton's father, because she was a relative of the policyholder and was driving a nonowned car with the owner's permission. *See* Joint Stipulations of Facts, Exhibit B.

Plaintiff's policy provided liability coverage in limits of $20,000 per person, $40,000 per accident. Defendant's policy contained a single, aggregate limit of $300,000. Each policy contained an "other insurance" clause that purported to apportion liability and losses in situations where another insurance policy covered the risk.

On April 24, 1987 Plaintiff tendered its $20,000 policy limit to Godfroid, who immediately rejected the settlement offer. At the same time, Plaintiff asked Defendant to assume the defense of Pendleton. De-

fendant refused to assume exclusive representation of Pendleton, but entered its appearance as co-counsel on May 28, 1987. Defendant assumed the defense of Pendleton exclusively on September 15, 1987. On January 6, 1988, counsel for Defendant and Godfroid settled the underlying suit for $212,500. Plaintiff contributed $20,000, its policy limit, and Defendant paid the remainder, $192,500.

The controversy in the present case concerns the costs of defending the Pendleton suit. Plaintiff expended $19,498.41 in defending the underlying action; Defendant spent $2,199.64 in defending the action after it assumed the exclusive defense of Pendleton. *See* Joint Stipulations of Fact, ¶ 8. The parties agree that these fees were reasonable and necessary to Pendleton's defense. Defendant also incurred $5,800.73 in legal expenses while it provided co-counsel to Pendleton. The parties agree that this amount was reasonable for the services rendered and that the services were beneficial to the defense, but Plaintiff argues that those services were not necessary to the defense.

## II. *Discussion*

■ The Maine Supreme Judicial Court has considered the problem of coincidental insurance coverage on a number of occasions and has developed a body of law governing apportionment of losses and costs of defense.[1] If two policies cover the same risk and each policy has a coincidental insurance clause, the court must resolve a "battle of the clauses." *See Carriers Insurance Co. v. American Policyholders' Insurance Co.*, 404 A.2d 216, 218 (Me. 1979). Where each clause seeks to make the policy "excess" insurance, that is, payable only after all other insurance has been exhausted, the clauses are "disregarded as mutually repugnant thus rendering applicable the general coverage of each policy." *Id.* at 220. Once the excess insurance clauses are disregarded, the insurers must share the loss equally until the limits of the

---

1. The parties do not dispute that Maine law applies in this diversity action, and the Court is satisfied that it must apply Maine law. *See Gates Formed Fibre Products, Inc. v. Plasti–Vac, Inc.*, 687 F.Supp. 688 (D.Me.1988); *Baybutt Construction Corp. v. Commercial Union Insurance Co.*, 455 A.2d 914 (Me.1983), overruled on other grounds, *Peerless Insurance Co. v. Brennon*, 564 A.2d 383 (Me.1989).

smaller policy are exhausted, with any remaining portion of the loss then being paid from the larger policy up to its limits. *Id.* at 221.

If the coincidental insurance clauses are not inconsistent or repugnant to one other, however, they are given effect. *Royal Globe Insurance Co. v. Hartford Accident and Indemnity Co.*, 485 A.2d 242, 243–44 (Me.1984). In *Royal Globe*, the Law Court held that a *pro rata* coincidental insurance clause was not inconsistent with an insurance clause that *expressly* made its coverage "excess." *Id.* at 243. The Law Court held that the *pro rata* clause did not specify whether the policy provided excess or primary coverage, and "[i]n the absence of any language to the contrary, insurance is considered to be primary." *Id.* at 243–44, *citing Baybutt Construction Corp. v. Commercial Union Insurance Co.*, 455 A.2d 914, 921 (Me.1983). The court gave effect to the excess insurance clause and held that the *pro rata* policy was liable for the full cost of the settlement and defense of the claim. *Id.*

The Law Court distinguished *Royal Globe* in *York Mutual Insurance Co. v. Continental Insurance Co.*, 560 A.2d 571 (Me.1989), where the court held that two coincidental insurance clauses were mutually repugnant and thus liability losses had to be prorated equally. One of the clauses in the *York* case was substantially similar to the clauses involved in the suit at bar, providing *pro rata* coverage for vehicles owned by the policyholder. The competing clause, which the Law Court characterized as an "excess" clause (*see York Mutual*, 560 A.2d at 573), provided that if there was other insurance, "we will pay the amount of your loss or the liability that is left after you have collected the full amount available under the other policy." 560 A.2d at 573. The Law Court held that "neither clause *expressly* makes its policy's coverage 'primary' or 'excess;' thus, we consider both policies' coverage to be primary." *York Mutual*, 560 A.2d at 573 (emphasis added), *citing Royal Globe*, 485 A.2d at 244.

Plaintiff contends that the coincidental insurance clauses at issue here are mutually repugnant, and that the Court must therefore disregard them as the Law Court did in *Carriers* and *York Mutual*. Plaintiff's policy, which provides coverage to the owner of the vehicle involved in the accident, provides:

> *If there is other applicable auto liability insurance on a loss covered by this Part, we will pay our proportionate share as our limits of liability bear to the total of all applicable liability limits.* Any insurance afforded under this Part for a vehicle you do not own, including a temporary, substitute car, however, is excess over any other collectible auto liability insurance.

Defendant's policy provides coverage to the nonowner and provides:

> If the insured is covered by other liability insurance, we will pay only the share of the damages that this policy's applicable limit of liability bears to the total of the limits of all collectible insurance. *However, for a substitute or non-owned car, we will pay, up to the limit of our liability, only that part of the damages not covered by the other insurance.*

In *York Mutual*, the Law Court held that where a clause does not *expressly* make the policy "primary" or "excess," the policy is considered primary. 560 A.2d at 573. Were it not for *Peerless Insurance Co. v. Brennon*, 564 A.2d 383 (Me.1989), an insurance case decided by the Law Court after *York Mutual*, this Court would feel constrained to hold that Defendant's policy does not expressly make the policy "excess," and thus must be considered primary. If both policies were considered primary, the loss and costs of defense would be prorated between the two insurers. *See State Farm Mutual Auto Insurance Co. v. Universal Underwriters Insurance Co.*, 513 A.2d 283 (Me.1986).

■ In *Peerless Insurance Co. v. Brennon*, however, the Law Court took the profound step of expressly overruling a prior opinion, *Baybutt Construction Corp. v. Commercial Union Insurance Co.*, 455 A.2d 914 (Me.1983). Neither *Peerless* nor

*Baybutt* involved coincidental insurance, but *Baybutt* is the source of the rule that if a coincidental insurance clause is silent as to whether it provides primary or excess coverage, the policy is to be considered primary. See *Royal Globe Insurance Co. v. Hartford Accident and Indemnity Co.*, 485 A.2d 242, 244.[2] The *Baybutt* and *Peerless* courts were faced with general liability insurance policies with identical exclusion provisions. The court in *Baybutt* held that the exclusions were ambiguous and that the policy would therefore be construed in favor of the insured and as providing primary coverage. The *Peerless* court disagreed with *Baybutt*, holding that "the Court in *Baybutt* mistook complexity for ambiguity ...," and thus because the language in the exclusions in the policy was unambiguous, construed it in accordance with its plain and commonly accepted meaning. 564 A.2d at 386. The court thus expressly overruled its contrary interpretation of the policy in *Baybutt*, giving effect to the express language of the exclusions.

This Court feels bound by the reasoning in *Peerless*. The coincidental insurance clause in Defendant's policy plainly and unambiguously provides that for non-owned vehicles, if there is other insurance, Defendant will be liable *"only* [for] that part of the damages not covered by the other insurance." (Emphasis added). The Court must give effect to the plain language of this limitation. Defendant's policy provides excess coverage, and Plaintiff's policy, which does not contain any language to the contrary, provides primary coverage. The clauses are not inconsistent or repugnant and need not be disregarded. *See Royal Globe*, 485 A.2d at 243.

Having determined that Plaintiff's policy provides primary coverage and Defendant's policy excess coverage, the Court must ascertain which insurer is responsible for the costs of defending the underlying suit.[3] Written into both policies are requirements that the carriers defend insureds to whom they offer coverage. *See* Joint Stipulations of Facts, Exhibits A and B. Neither policy, however, delineates the extent of the duties to defend where both primary and excess insurance covers the loss. In this situation, the Court holds that the primary carrier has the initial and principal duty to defend the common insured. This approach provides a certainty that promotes the best interests of the insured as well as the insurers. The rationale for this conclusion is well-stated in Appleman's treatise on insurance:

> Excess insurance is routinely written in the insurance industry with the expecta-

---

**2.** The court in *Baybutt* held that the insurance policy involved in that case, being "the crafty product of insurers who made the policy, selected its language and ordained its particular structure ...," should be construed strictly against the insurer and liberally in favor of the insured. 455 A.2d at 921. The court stated that an insurer could exclude coverage *"only where* such separately stated 'exclusions,' when viewed as a whole, unambiguously and unequivocally negate coverage." *Id.* (emphasis in original).

**3.** The Law Court specifically addressed the question of apportionment of legal fees between two *primary* insurers in *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.*, 513 A.2d 283 (Me.1986). In *State Farm* the court upheld the trial court's determination that two insurance policies were primary, and thus liability losses and legal fees were prorated equally. 513 A.2d at 286–87. The court held that "[i]f prorating the loss equally up to the limits of the lower policy 'is an equitable basis for prorating damage liability, it provides like justification for a similar pro-

ration of suit expenses.'" *Id.* at 287, *quoting General Accident Fire and Life Assurance Corp. v. Continental Casualty Co.*, 287 F.2d 464, 467 (9th Cir.1961). The court also held that where two insurers cover the same risk, it is appropriate to apportion legal fees between them in proportion to the respective coverage afforded by them to the insured. *Id.*

The result the court reached in *State Farm* is somewhat unclear. The court held that it was appropriate to apportion losses and legal expenses "equally up to the limits of the lower policy," as the court had previously held in *Carriers* with respect to apportionment of losses. *Id.* However, the court appears to have sanctioned an apportionment based on the respective coverage afforded by each insurer, a result explicitly rejected by the *Carriers* court. In addition, the court cited a number of cases which prorated legal expenses based on the respective policy limits. The Court need not resolve this confusion, however, because *State Farm* has no application to the case at bar, which deals with proration of legal fees between a primary and an excess insurer.

**20**

tion that the primary insurer will conduct all of the investigation, negotiation and defense of claims until its limits are exhausted.... Thus, the primary insurer acts as a sort of deductible and the excess insurer does not expect to be called upon to assist in these details. The duty of the primary insurer is not divisible or limited to those suits that are within the policy limits and the insuring agreement creates a duty to defend any suit regardless of the amount claimed against the insured and the excess insurer is a third party beneficiary of the agreement.

7C J. Appleman, *Insurance Law and Practice* § 4682 at 28; *see also* 14 *Couch on Insurance 2d* § 51:36 at 446 ("In automobile insurance situations there are often primary and secondary insurers, as such the primary has the duty to defend and if the secondary insurer is forced to defend, it may recover the cost of defense from the primary.")[4]

The Court is persuaded that Maine courts would adopt this approach. Plaintiff had the primary and principal duty to defend the insured.[5] Plaintiff, therefore, is

4. The Court notes that no legal expenses were incurred by the primary insurer after it had actually paid its policy limits by way of settlement or judgment. Furthermore, while the excess insurer did not have the *primary* duty to provide a defense to the common insured, it would be obligated to do so if the primary insurer refused or was unable to provide a defense to the insured.

5. The Court is aware of the Law Court's holding in *Travelers Indemnity Co. v. Dingwell*, 414 A.2d 220 (Me.1980). There three insurance carriers brought an action seeking a declaratory judgment as to whether a class action seeking damages for contamination of the plaintiff's well water resulting from Dingwell's alleged operation of an industrial waste facility was an insured event under the respective policies. Travelers Indemnity Company was the primary carrier, with excess coverage provided by American Policyholders Insurance Company and Chicago Insurance Company. The insurers sought to have determined whether their respective policies obligated them to defend against a class action in the first instance and secondly, to indemnify the insured as to any judgment entered against him in that class action. In the cited opinion, the court dealt only with the question of whether the carriers had a duty to

not entitled to recover any of the costs it expended in defending the underlying suit.

Accordingly, Plaintiff's Motion for Summary Judgment is DENIED. Defendant's Motion for Summary Judgment is GRANTED.

SO ORDERED.

defend the insured in respect to the class action. *Id.* at 222. The court there held "that all three insurers do have a duty to defend Dingwell in the underlying class action." *Id.* at 228.

It is important to note, however, that no issue was generated among the carriers as to where the duty lay to initially go forward with the provision of the defense if two or more of them were so obligated on the facts of the declaratory judgment action. Accordingly, the Law Court was not called upon to decide, and did not declare, what was the obligation or the carriers *inter se* with respect to the provision of the defense once it was determined that all were obligated to provide a defense under the language of their respective policies. The primary carrier was Travelers Indemnity Company and presumably it assumed the defense in the first instance. The impact of the Law Court's ruling in the case was simply that if the primary carrier would not, or could not, provide the defense, the excess carriers were legally obliged to do so either on the basis of their required priority of performance in the total insurance structure available to the insured or pursuant to such agreement for that purpose into which two or more excess carriers might enter. The ruling does not disturb in any way the traditional rule that the primary carrier bears the burden of defense.