**CITY OF OLD TOWN and David O. Cole, Plaintiffs,**

v.

**AMERICAN EMPLOYERS INSURANCE COMPANY, Defendant.**

**NATIONAL CASUALTY COMPANY, Plaintiff,**

v.

**AMERICAN EMPLOYERS INSURANCE COMPANY, Defendant.**

Civ. No. 93–273–B.

United States District Court, D. Maine.

July 19, 1994.

Jeffrey T. Edward, Preti, Flaherty, Beliveau & Pachios, Portland, ME, for plaintiff City of Old Town and David O. Cole.

Thomas F. Monaghan, Monaghan, Leahy, Hochadel & Libby, Portland, ME, for plaintiff Nat. Cas. Co.

Kevin M. Cuddy, Cuddy & Lanham, Bangor, ME, for defendant American Employers Ins.

## ORDER AND MEMORANDUM OF OPINION

BRODY, District Judge.

### I. Background

Norman Harrington filed a civil rights suit in this Court that named the City of Old Town ("City") and the City Manager, David Cole, among others, as defendants. (*Harrington v. Old Town,* Civil No. 89–0207–B (D.Me. filed Aug. 30, 1989).) The Complaint alleged that the City and Cole engaged in conduct between May 1987 and July 1989 that violated Harrington's civil rights. The City notified its comprehensive general liability carrier, the American Employers Insurance Company ("American"), of the suit by letter dated September 14, 1989. American declined to defend or indemnify the City or Cole in a letter dated November 18, 1989.[1]

The City carried public official and employee legal liability coverage through National Casualty Insurance Company ("National") from January 23, 1989 through January 23, 1990. National defended the City and Cole in the *Harrington* case, and reserved its rights to contest its duty to defend or indemnify.

Harrington amended his Complaint on April 1, 1993, eliminating reference to the Defendants named in the original Complaint that the Court had dismissed, but not altering the substance of the claims against the City and Cole. The case proceeded to trial. The jury returned a verdict for Harrington on June 18, 1993. The parties settled their claims during the appeal period. The City and National each contributed $450,000 to the $900,000 settlement, and National paid the City's and Cole's defense costs of $147,-294.49.

The City and Cole filed a declaratory judgment action against American in state court. American removed the case to this Court in November 1993. The City and Cole seek a determination of the respective rights and liabilities under the American policies.

National filed a declaratory judgment action against American in this Court in April 1994. National seeks to have the Court construe the American policy, and determine the rights and liabilities of American thereunder.

American asserted a counterclaim against National in May 1994 seeking to have the Court construe the provisions of the City's National insurance policy. American asserts that National was contractually bound to pay the City's and Cole's defense costs and the settlement amount.

The City, Cole and National have filed summary judgment motions against American. American has filed a cross-motion of summary judgment against the City, Cole and National.

In a diversity case, this Court applies the Maine choice-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Accordingly, the law of the state that "has the most significant relationship to the transaction and the parties" applies. *Baybutt Construction Corp. v. Commercial Union Ins. Co.,* 455 A.2d 914, 918 (Me.1983), *overruled on other grounds by Peerless Ins. Co. v. Brennon,* 564 A.2d 383 (Me.1989). Because this action arose in Maine and involves Maine residents, the instant case is governed by Maine law. *See id.; Gates Formed Fibre Prod., Inc. v. Plasti–Vac, Inc.,* 687 F.Supp. 688, 690 (D.Me.1988).

---

1. The letter stated that American's review "of the complaint and the insurance policy confirm that there is no possibility of insurance coverage for Mr. Harrington's claims." Letter of Nov. 18, 1989 at 1.

## II. The Standard

Summary judgment is appropriate when: the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must read "the record and indulge all inferences in a light most favorable to the nonmoving party." *Levy v. FDIC*, 7 F.3d 1054, 1056 (1st Cir. 1993) (quoting *Rivera–Ruiz v. Gonzalez–Rivera*, 983 F.2d 332, 334 (1st Cir.1993)).

## III. American

The City purchased three comprehensive general liability insurance policies from American. The first ran from January 22, 1987 until January 22, 1988; the second from January 22, 1988 until January 22, 1989; and the third from January 23, 1989 until January 23, 1990. The Court is unable to determine from the submitted facts what American policies apply in this case. Under any of the three policies, however, American breached its duties to defend and indemnify in the *Harrington* action.

### A. Duty to defend

The City, Cole and National assert that American breached its duty to defend the City and Cole in the *Harrington* suit.

■ The Court determines the scope of an insurer's duty to defend by comparing the insurance policy in question with the underlying complaint. If this comparison yields " 'any legal or factual basis that could obligate an insurer to indemnify, then the insured is entitled to a defense.' " *Maine Bonding & Casualty Co. v. Douglas Dynamics, Inc.*, 594 A.2d 1079, 1080 (Me.1991) (quoting *State Mut. Ins. Co. v. Bragg*, 589 A.2d 35, 36 (Me.1991)). The insured has a duty to defend if *any potential* exists that the facts, if ultimately proved, may come within the scope of the coverage that the

policy in question provides. *Id.; Lavoie v. Dorchester Mut. Fire Ins. Co.*, 560 A.2d 570, 571 (Me.1989).

Harrington's original Complaint states:

The bad faith actions of ... David O. Cole ... and the City of Old Town, in ordering Norman Harrington to submit to offensive physical invasions of his person and suspending him without pay when he refused, constituted ... an invasion of privacy.

(Complaint at 5.) Count V of the Complaint asserts that Cole and the City "maliciously conspired" to damage Harrington's "reputation, deprive him of his employment" and "subject him to humiliating physical and psychological examinations." (Complaint at 18.) It further alleges that Harrington "suffered severe emotional distress and damage to his reputation and profession" as a result of the "intentional deprivations of [Harrington's] constitutional rights." (*Id.* at 19.)

#### 1. Bodily injury

■ The City, Cole and National assert that American had the duty to defend the *Harrington* case based on the bodily injury coverage contained in the American policies. Because the facts alleged in the Complaint described bodily injury caused by an occurrence, American had a duty to defend the City and Cole in the *Harrington* case.

The 1987–89 policies require that American:

pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of *bodily injury* ... to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury.[2]

American asserts in its cross-motion for summary judgment and its responses to the summary judgment motions of the City, Cole and American that the *Harrington* Complaint did not allege "bodily injury" caused by an "occurrence."

---

**2.** The 1989–90 policy contains slightly different language. American agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' ... to

which this insurance applies." The policy states that " 'bodily injury' ... must be caused by an 'occurrence'."

■ The American policies define "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period." Because the *Harrington* Complaint alleged severe emotional distress, it alleged bodily injury. *See Maine Bonding,* 594 A.2d at 1081 (a duty to defend arises under a bodily injury policy when the complaint filed against the insured alleges "emotional distress").

The 1987–89 policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury ... neither expected nor intended from the standpoint of the insured."[3] American argues that there was no occurrence because Cole's actions were intentional.

■ The language "neither expected nor intended from the standpoint of the insured" refers:

only to bodily injury that the insured in fact *subjectively wanted* ('intended') to be a result of his conduct or in fact *subjectively foresaw as practically certain* ('expected') to be a result of his conduct.

*Patrons–Oxford Mutual Ins. Co. v. Dodge,* 426 A.2d 888, 892 (Me.1981); *Burns v. Middlesex Ins. Co.,* 558 A.2d 701, 702 (D.Me. 1989). There is nothing in the *Harrington* Complaint that indicates that Cole subjectively wanted to cause Harrington emotional distress or subjectively foresaw the emotional distress as practically certain to result from Cole's conduct.

**3.** The language of the 1989–90 policy differs, but the effect is the same. That policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy then excludes bodily injury "expected or intended from the standpoint of the insured."

**4.** The 1989–90 policy requires American to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' ... to which this insurance applies." The 1989–90 policy that American submitted in support of their summary judgment motion contains a page that is not part of the policy submitted by the City and Cole. The page is an exclusion of personal injury. It states: "Coverage B (Section I) [the personal injury section] does not apply and none of the references to it in the Coverage Part apply." The page appears inconsistent with

## 2. *Personal injury*

■ The City, Cole and National contend that American had a duty to defend based upon the personal injury coverage afforded by the American policies. The Court agrees.

The 1987–89 American policies cover personal injury:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury ... to which this insurance applies, ... and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury.[4]

American contends that the *Harrington* Complaint did not allege personal injury. The definition of personal injury contained in the 1987–89 policies includes:

a publication or utterance (a) of a libel or slander or other defamatory or disparaging material, or (b) in violation of an individual's right of privacy.[5]

American argues that *United Pacific Ins. Co. v. First Interstate Bancsystems, Inc.,* 690 F.Supp. 917 (D.Mont.1988) supports its position. The policy in question in *United Pacific* defined personal injury as injury arising out of a number of torts including publication of defamatory materials, and the complaint in question alleged wrongful termination and bad faith. *Id.* at 918. The complaint bolstered the charges of bad faith by alleging that the insured put erroneous material in

the rest of the policy. For example, the policy contains more than one reference to the liability limit for personal injury. No party discussed or even mentioned this page in any written submission or oral argument. Because the duty to defend analysis does not turn on this issue, however, the Court does not resolve this apparent inconsistency.

**5.** The 1989–90 policy states a somewhat different definition:

'Personal injury' means injury, other than 'bodily injury', arising out of one or more of the following offenses: ... (d) Oral or written publication of material that slanders or libels a person ... or disparages a person's ... goods, products, or services; or (e) Oral or written publication of material that violates a person's right of privacy.

her employment file. The court ruled that the insurer did not have a duty to defend the insured against this complaint because the complaint did not contain a specific allegation of defamation. *Id.*

The Court recognizes that a personal injury policy is not insurance for every risk. While American is correct in stating that Count V of the *Harrington* Complaint does not state the words "libel," "slander," or "right of privacy," the Complaint does state that the City and Cole's actions constituted an "invasion of privacy." This language is sufficient to trigger American's duty to defend. *See Maine Bonding*, 594 A.2d at 1080; *Bragg*, 589 A.2d at 36.

*B. Duty to indemnify*

The City, Cole and National contend that American has a duty to indemnify the City and Cole for the *Harrington* settlement. American asserts that its policies do not give rise to a duty to indemnify.

■ The standard that the Court uses to determine whether an insurer has a duty to indemnify is more narrow than that used to determine whether a duty to defend exists. *Maine Bonding*, 594 A.2d at 1080. The Court must determine whether American has become legally obligated to pay damages because of bodily injury or personal injury.

The jury returned a verdict against the City and Cole for $950,000 in compensatory damages. These damages are based on the jury's finding that the City and Cole violated Harrington's constitutional rights and caused "actual damage[ ] to Plaintiff Harrington for severe emotional distress and injury to his reputation." (Jury verdict form filed June 17, 1993 at 2.) The jury also returned a verdict against Cole for $10,000 in punitive damages. The jury found that Cole's actions were "motivated by evil motive or intent or ... involve[d] reckless or callous indifference" to Harrington's federally protected rights. (*Id.* at 3.)

■ The parties settled this case for $900,-000 pending appeal. Because the settlement was less than the total compensatory damages, the Court will treat the settlement, as American urges, as if all damages were compensatory.[6]

■ The damages do not constitute damages for bodily injury. Although American had a duty to defend because of the possibility that the evidence in the case would expose bodily injury, the record does not reflect that Harrington suffered "bodily injury, sickness or disease" as a result of emotional distress or injury to his reputation.

■ The damages constitute damages for personal injury. The jury was not asked to find that the City or Cole were liable for slander or libel. However, the jury's finding that the City and Cole injured Harrington's reputation necessarily implies that the City and Cole uttered some "defamatory or disparaging material," within the plain language of the policies. The American policies do not cover only libel or slander. They instead include broad language that covers the utterance of "defamatory or disparaging material" and the "violation of an individual's right of privacy." The Court will construe this ambiguous language against American, and in favor of coverage. *See Massachusetts Bay Ins. Co. v. Ferraiolo Constr. Co.,* 584 A.2d 608, 609 (Me.1990).

On the record before it, the Court is unable to determine, as a matter of law, what American policy or policies covers this personal injury damage. The Court is also unable to decide, as a matter of law, the liability limit under the relevant American policy or policies.[7]

*C. Other policy provisions*

■ American asserts that certain exclusions in its policies preclude coverage. The Court finds no merit in these arguments.

The 1987–89 American policies exclude coverage for "Personal Injury arising from the activities of any Law Enforcement Agen-

---

**6.** The policies do not define "damages." Punitive damages are, therefore, covered within the plain language of the policy.

**7.** The personal injury coverage is limited to either $300,000 (see Special Declarations Page at 3) or $500,000 (see General Change Endorsement) for the 1987–88 and 1988–89 policies.

cy."[8] This exclusion applies only when the activity alleged in the complaint is connected to law enforcement activity. *See Murdock v. Dinsmoor*, 892 F.2d 7, 8 (1st Cir.1989). The activity alleged in the *Harrington* Complaint was not connected to law enforcement activity.

■ The American policies also contain a so-called workers' compensation exclusion. This exclusion is inapplicable to this case. *See Hebert v. International Paper Co.*, 638 A.2d 1161, 1163 (Me.1994) (work related injuries are those suffered while at work, because one is at work).

■ American alleges in its cross-motion for summary judgment that the City and Cole breached policy conditions that were a condition precedent to indemnification. These allegations lack merit. American alleges that the City and Cole breached Condition (4)(b) in the 1987–89 policies ("the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him").[9] American declined to defend the City and Cole after a review of the original Complaint. The City and Cole had no duty to continue to forward documents to American. American also alleges that when the City and Cole settled the claim without first notifying American that they breached Condition (4)(c) in the 1987–89 policies ("[t]he insured shall not, except at his own cost, voluntarily make any payment").[10] Following American's decision not to defend the City and Cole, the City and Cole had no continuing obligation to perform an exercise in futility under the insurance contract. *Cf. Gates Formed Fibre Products, Inc. v. Imperial Casualty and Indem. Co.*, 702 F.Supp. 343 (D.Me.1988) (when *defending* insured, insurer had no duty to indemnify when insured settled its claims without notice to insurer).

## IV. National

National seeks reimbursement from American for the $450,000 that it contributed in settlement in the *Harrington* case, and for the costs of defending Old Town and Cole.

The National policy is a public official and employee legal liability policy. It states:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages as a result of claims first made during the period of this policy, against the Insured by reason of any Wrongful Act, rendered in the discharge of Public Entity duties.

■ The National policy contains an "other-insurance exclusion" that is an escape clause. It states:

> The Company shall not be obligated to make any payment or defend any lawsuit in connection with any claim made against the Insured ... (3) [w]hich is insured by another valid policy or policies.

Other-insurance exclusions are valid in liability policies. *See Carriers Ins. Co. v. American Policyholders' Ins. Co.*, 404 A.2d 216, 218 (Me.1979).

■ American had both the duty to defend and the duty to indemnify the *Harrington* case. The City and Cole, therefore, carried "another valid policy" of insurance that triggered National's escape clause.

This conclusion is not eclipsed by any language in the American policy. The American policies contain an other-insurance clause. The 1987–89 policies state:

> The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced

---

**8.** The 1989–90 policy language differs. It excludes bodily, property, personal or advertising injury "arising out of any act or omission of your police department or any other law enforcement agency of yours including their agents or employees."

**9.** The 1989–90 policy contains the equivalent language in section IV(2)(c)(1).

**10.** The 1989–90 policy contains equivalent language in section IV(d).

by the existence of such other insurance.[11] The American policy was primary. The National escape clause and the exclusions in the policy that relate to bodily and personal injury render the National coverage contingent. Therefore, reading the two policies together, National coverage is precluded by the escape clause in its policy.

### V.  Conclusion

The Court GRANTS the City and Cole's and National's Motions for Summary Judgment, in part. American will reimburse National for the cost of defending the City and Cole in the *Harrington* claim. American is also liable to the City and Cole, and National for settlement costs that do not exceed its personal injury liability limit. The Court is currently unable to determine, as a matter of law, the proper apportionment between the City and Cole, and National. The Court will, therefore, leave for determination at trial, or by agreement of the parties, what American policy or policies apply, the liability limit for personal injury damages, and the apportionment between the City and Cole, and National Casualty.[12]

*SO ORDERED.*

---

11.  The 1989–90 policy states:

Condition (4) If other valid and collectible insurance is available to the insured for a loss we cover ... (a) ... This insurance is primary.... [O]ur obligations are not affected unless any of the other insurance is also primary.

12.  American submitted an affidavit of Warren Silver, Esq. in support of its Cross–Motion for Summary Judgment. The City and Cole filed a Motion to Strike the affidavit. The Court did not consider the affidavit in arriving at its decision, and, therefore, DENIES the Motion to Strike, as moot.