**CONTINENTAL INSURANCE COMPANY, Plaintiff,**

v.

**Judy L. McKAIN, Robert McKain, Nancy Weidinger and Jefferson Duncan and Aetna Casualty & Surety Company, Defendants,**

v.

**ALLSTATE INSURANCE COMPANY, Third–Party Defendant.**

Civ. A. No. 92–0296.

United States District Court, E.D. Pennsylvania.

May 14, 1993.

Edward J. Cermanski, E. Douglas Sederholm, White and Williams, Philadelphia, PA, for Continental Ins. Co.

Michael J. Panichelli, Litvin, Blumberg, Matusow & Young, Philadelphia, PA, for Judy L. McKain and Robert McKain.

Michael J. McCaney, Jr., Boroff, Harris & Heller, P.C., Steven Kapustin, Plymouth Meeting, PA, for Nancy Weidinger.

Elissa J. Kahn, Goldfein & Joseph, Philadelphia, PA, for Aetna Cas. & Sur. Co.

Jack T. Ribble, Jr., German, Gallagher & Murtagh, Philadelphia, PA, for Allstate Ins. Co.

Michael P. McKenna, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, PA, for Pennsylvania Nat. Ins. Companies.

## MEMORANDUM AND ORDER

YOHN, District Judge.

Plaintiff Continental Insurance Company ("Continental") and defendant Aetna Casualty and Surety Company ("Aetna") have filed this supplemental joint motion for summary judgment on the remaining outstanding issue in the case. This court's order dated February 22, 1993, in response to the insurers' prior motions for summary judgment, required both Continental and Aetna to indemnify Jefferson Duncan and to defend him in the underlying suits filed in the Philadelphia Court of Common Pleas. In the briefs for those motions, neither Continental nor Aetna briefed the issue of the apportionment of indemnity and defense costs if both companies were held responsible for providing coverage. This supplemental motion addresses the issue whether Continental and Aetna must contribute to the liability and defense costs of Jefferson Duncan in equal shares or on a pro rata basis, in proportion to their respective policy limits.

## I. INTRODUCTION

There are two separate issues for the court to decide: the manner of apportionment of defense costs and the manner of apportionment of indemnity or liability costs. These two types of costs can be handled in the same way, but they need not be, and not all courts have treated them in the same way.

In discussions of apportionment, courts and parties have used the term "pro rata" in several different ways. Black's Law Dictionary defines "pro rata" as:

> Proportionately; according to a certain rate, percentage, or proportion. According to measure, interest, or liability. According to a certain rule of proportion. For example, if a corporation has ten shareholders each of whom owns 10% of the stock, a pro-rata dividend distribution of $1,000 would mean that each shareholder would receive $100.

With regard to apportionment of insurance costs, pro rata usually means a division in proportion to policy limits,[1] and when this court uses the term "pro rata" without further designation, it means that.[2] However, "pro rata" has also been used to mean apportionment by equal shares and apportionment in proportion to the ratio between the premiums paid to a particular insurer and the total premiums paid to all insurers covering the occurrence. Windt, Insurance Claims and Disputes, 1988, § 7.04. This last method of apportionment has been tried by several courts, but it has not been used extensively. *See e.g. Insurance Co. of Tex. v. Employers Liab. Assur. Corp.* 163 F.Supp. 143 (S.D.Cal. 1958); *Indiana Ins. Co. v. Federated Mut. Ins. Co.,* 415 N.E.2d 80 (Ind.Ct.App.1981). Insurance policies that covered the same occurrence may have had different premiums because they covered a different range of risks or insureds; in that case, the cost of the premiums would not necessarily have reflected the amount paid to insure the risks or the persons covered in the particular occurrence.

In the example quoted above from Black's Law Dictionary, pro rata distribution in proportion to the number of shares held and equal distribution among investors yield the same result. Similarly, in some of the cases

---

1. *See* 69 A.L.R.2d 1122, "Apportionment of liability between liability insurers each of whose policies provides that it shall be 'excess' insurance."

2. Black's Law Dictionary also defines "pro rata clause" as follows:

> Such clause commonly used as other insurance provision in automobile liability policy provides that when an insured has other insurance available, company will be liable only for proportion of loss represented by ratio between its policy limit and total limits of all available insurance.

discussed below, where two insurers insured the same risk in the same amount, apportionment in equal shares and in proportion to the policy limits yield the same result. It is therefore necessary to determine in each case where those two methods yield the same result whether the court means to distinguish them. Cases in which the court or the facts do not clearly distinguish these two types of apportionment provide little guidance in the present case, in which pro rata apportionment in proportion to policy limits and in equal shares yield very different results. In the present case, if the parties apportion the costs in proportion to the policy limits, Continental will pay ten times the amount that Aetna pays.

The parties do not dispute that Pennsylvania law governs the underlying cases, but unfortunately, the Pennsylvania courts provide little guidance on the issue that is the subject of this motion. The parties cite cases from the courts of common pleas of several counties, from federal courts applying Pennsylvania law and from other jurisdictions. The few cases cited from the appellate courts in Pennsylvania are not directly on point.[3]

There is one indication that the Pennsylvania legislature favors pro rata apportionment in relation to policy limits in the case of double insurance or "other insurance" for an occurrence.[4] Title 40 Pa.Stat.Ann. § 636(2) sets out requirements for fire insurance policies, and gives a standard form policy with required inclusions. One clause, entitled "Pro rata liability," states, "This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance

covering the property against the peril involved, whether collectible or not." 40 Pa. Stat.Ann. § 636(2). The legislature did not promulgate a similar requirement with regard to other types of insurance. In doing so with regard to fire insurance, however, it could have chosen any of the three methods of prorating discussed above. The fact that the legislature chose to require proration in proportion to the amount of insurance covering the risk demonstrates that the legislature has a preference for this method of apportionment and considers it to be a fair one.

The language of the policies as to apportionment of indemnity costs and as to duty to defend is often determinative in the cases. Where both relevant policies contained language favoring a particular principle of apportionment, the court applied it. *Liberty Mutual Ins. Co. v. Home Ins. Co.*, 583 F.Supp. 849 (W.D.Pa.1984). *Occidental Fire and Casualty Co. v. Brocious*, 772 F.2d 47 (3d Cir.1985).

In the instant case, the Aetna policy provides:

When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of insurance of our Coverage Form bears to the total limits of all the Coverage Forms and Policies covering on the same basis.

Aetna Policy, Section V(5)(C), Aetna Exhibit C–19. The Continental policy states:

If other valid and collectible insurance applicable to any "Accident", "Loss" or ex-

---

**3.** Aetna cites two such cases. It distinguishes *Vrabel v. Scholler*, 372 Pa. 578, 94 A.2d 748 (1953), which ordered apportionment on an equal basis. In that case, the two policies had the same limits and a pro rata division would have yielded the same result. Aetna cites in support of pro rata apportionment the case of *J.H. France Refractories Company v. Allstate Insurance Co.*, 396 Pa.Super. 185, 578 A.2d 468 (1990), *alloc. granted*, 527 Pa. 634, 592 A.2d 1302 (1991). That case is distinguishable from the instant one in that it involved different insurance policies that covered the same risk in sequence. The injuries, which were caused by exposure to asbestos, accumulated over a long period of time, thus triggering the consecutive policies. The court apportioned indemnity in

proportion to the time period each policy covered relative to the total period of exposure that was covered by all the policies. This "temporal pro rata" apportionment devised by the *J.H. France* court was peculiar to the facts of that case and provides no guidance for apportionment in cases of other insurance covering the same injury in the same time period.

**4.** Under Pennsylvania law, "other insurance" means that two or more policies cover the same interest, the same subject matter and the same risk. *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mut. Ins. Co.*, 385 Pa. 394, 400, 123 A.2d 413, 415 (1956).

pense covered by this policy is available to the "Insured", other than "You", the insurance afforded by this policy shall be excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms of other insurance.

Continental policy at Endorsement # 7(2).[5] The Aetna policy shows a clear preference for proration in proportion to policy limits. The Continental policy shows no preference as to method of apportionment, if it is required. The policy merely states that it intends not to be subject to the terms of "other insurance." If this court decides on pro rata apportionment, it will not be because it finds Continental to be bound by the terms of Aetna's policy but, rather, because it decides that is the appropriate manner of apportionment.

## II. DUTY TO INDEMNIFY

The case that provides the strongest support for Aetna's position that liability costs should be prorated is *Transport Indemnity Co. v. Home Indemnity Co.*, 535 F.2d 232 (3d Cir.1976). In that case, the insurer of the lessee of a truck ("Transport") brought an action against the insurer of the lessor of the truck ("Home") for a judgment declaring their respective responsibilities in a lawsuit arising out of a collision of the truck and a passenger car. The court found that Transport provided coverage under two separate policies. The first provided $10,000.00 of primary coverage and included a duty to defend. The second provided $1,990,000.00 in excess coverage; the court said nothing about a duty to defend with respect to Transport's excess policy. The court further found that the Home policy provided excess coverage, but, again, the court did not mention a duty to defend in this policy. With regard to apportionment, the court stated:

> The primary coverage afforded by Transport's policy extends to the first $10,000. If ultimately liability is established beyond that amount, it must be prorated between the two carriers of excess insurance according to the limits in the policies.

535 F.2d at 239 (citation and footnote omitted).

■ This statement provides this court with specific direction on the issue of apportionment of liability costs. The focus of *Transport Indemnity* was, as in the instant case, whether the respective policies provided coverage and, if so, whether primary or excess coverage; in addition, the court added a statement about the method of proration. Continental argues that the statement relating to the method of apportionment of excess coverage is dictum, presumably because liability had not yet been assessed in the underlying case, and it was not certain that liability would rise above the $10,000.00 that Transport owed in primary coverage. The court cannot agree that the statement is dictum.

■ Under the Declaratory Judgment Act, 28 U.S.C. § 2201, 2202, the court may exercise its discretion to declare the respective responsibilities of the parties with regard to justiciable controversies. *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945) (requirements for justiciable controversy in declaratory judgment proceedings are same as in any other type of action). It may do so in an insurance case where an underlying action has been filed in state court and the amount of liability has not yet been determined, if the declaratory judgment action will serve a useful purpose. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (where there is a concrete case admitting of an immediate and definite determination of the legal rights of the parties, declaratory judgment is appropriate although it may not require payment of damages); *Samuel Goldwyn Inc. v. United Artists Corp.*, 113 F.2d 703 (3d Cir.1940) (declaratory judgment is proper where it will serve a useful purpose in clarifying and settling legal relations in issue). "Where ... the essential facts establishing a right to relief, including declaratory relief, have already occurred, the case is justiciable." *Riehl v.*

---

**5.** In the prior memorandum opinion in this case, this court found that both insurance policies had mutually repugnant excess clauses that canceled each other out, and that the two insurers stood on an equal footing, with each having responsibility for primary coverage.

*Travelers Ins. Co.*, 772 F.2d 19, 22 (3d Cir. 1985).

In the instant action, it will serve a useful purpose to clarify the legal relations of the insurers now, while this court has the case before it; the clarification could preclude the need for trial in the underlying cases. The parties to the instant action declare in their supplemental motion that they cannot proceed until the issues of apportionment are resolved. Continental does not appear to believe that this court's determination as to indemnity apportionment will be nonbinding dictum merely because liability has not yet been determined in the underlying cases. Nor does the court consider it so, not in this case nor in *Transport Indemnity*.

The *Transport Indemnity* court said nothing about the limits of the Home policy; however we can conclude that the two policies had different limits. It is exceedingly unlikely that Home, which provided only excess coverage, would have provided the same limit for excess coverage that Transport did: $2,990,000.00. The only plausible explanation for this awkward amount of excess coverage provided by Transport is that it was meant to complement the $10,000.00 that Transport provided in primary coverage, for a total of $3,000,000.00 in insurance coverage. Therefore, there is virtually no likelihood that, in *Transport Indemnity*, apportionment pro rata would yield the same result as apportionment in equal shares, and the court has clearly chosen the former method of apportionment.

■ *Transport Indemnity* does, therefore, provide direction from the United States Court of Appeals for the Third Circuit in a case where the federal court has jurisdiction by virtue of diversity and applies Pennsylvania law, and where two insurers each provide "other insurance" in different amounts. They must share the indemnity costs in proportion to their policy limits. There are some differences in the fact patterns of *Transport Indemnity* and the instant case, but none that is significant in the present context. This court can find no meaningful way to distinguish the cases. It is therefore

bound by *Transport Indemnity* and will order that liability costs in the underlying cases be apportioned pro rata.

Even if this court were not bound by *Transport Indemnity*, it would reach the same conclusion. It, like the majority of courts,[6] simply finds the arguments in favor of pro rata apportionment more persuasive than those against it. A major argument against a pro rata approach to indemnification is that it is inequitable because the cost of liability insurance does not increase proportionately with the policy limits. Windt at § 403. Initial basic insurance coverage is the most expensive, and once it has been obtained, significant additional coverage can be bought at a modest increase in cost. Because of this, some courts have reached the conclusion that the majority rule unfairly discriminates against the larger policy. *Carriers Ins. Co. v. American Policyholders Ins. Co.*, 404 A.2d 216 (Me.1979); *Cosmopolitan Mutual Ins. Co. v. Continental Cas. Co.*, 28 N.J. 554, 147 A.2d 529; *Reliance Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 753 F.2d 1288 (4th Cir.1985).

■ This court is not persuaded, however, that pro rata apportionment is unfair just because the premiums do not rise in tandem with the amount of coverage. Despite the majority rule in favor of pro rata apportionment when two carriers provide coverage on the same basis, insurance companies have continued to provide significant amounts of excess insurance at low cost. Their calculations of the overall cost of providing such insurance will have included the financial consequences of the fact that, in the majority of jurisdictions, they have been required to contribute pro rata when their high coverage policies have provided "other insurance" to policies with lower limits. Assuming that insurance companies have adjusted their practices to the majority rule (rather than expecting the majority rule to adjust to their practices, as Continental seems to. suggest), then equal shares apportionment will provide "something of a windfall to the insurer with the higher limits, ..." Windt at § 403.

**6.** 8A Appleman, Insurance Law and Practice, § 4909; 69 A.L.R.2d 1122.

The court is equally unpersuaded by the argument that, as Continental quotes,

> [the] majority rule unfairly discriminates against the larger policy by apportioning the loss in proportion to the respective policy limits, utterly forgetting that both insurers, by their contracts, have agreed to cover a loss up to the limits of the lesser policy.

*Carriers*, 404 A.2d at 221–22. Instead, this court finds the better reasoning on this point to be that of the court in *Buckeye Union Ins. Co. v. State Auto. Mut. Ins. Co.*, 49 Ohio St.2d 213, 361 N.E.2d 1052, 1053 (1977), which stated:

> The majority rule is to prorate liability according to the amount of coverage provided by each insurer. This method of proration "assures indemnification for the insured up to the maximum amount of coverage afforded by each policy," and it takes into consideration the respective liabilities that the two insurers would have incurred had there not been other insurance.

Other courts in this circuit have taken the same position. In *Liberty Mut. Ins. Co. v. Pacific Indem. Co.*, 579 F.Supp. 140 (1984), in determining how liability was to be apportioned between two excess policies insuring on an equal basis, the court said:

> Although both stand on equal basis for liability, Liberty Mutual's policy limitation is $10,000,000 while American Home's limitation is $5,000,000. Liberty Mutual has undertaken the higher risk and presumably has received commensurate premiums. For this reason the rule in this Circuit and in the majority of jurisdictions is that each insurer's liability is to be prorated according to the limit of its policy. *Transport Indemnity Co. v. Home Indemnity Co.*, 535 F.2d 232 (3d Cir.1976); *Insurance Co. of North America v. Continental Casualty Co.*, 431 F.Supp. 316 (E.D.Pa.1977), rev'd on other grounds, 575 F.2d 1070 (3d Cir.1978); *Horace Mann Insurance Co. v. CNA Insurance Co.*, 23 D. & C.3d 433 (Somerset 1982); see also 69 A.L.R.2d 1122. We believe this to be the better rule and apply it here.

579 F.Supp. at 144.

The carrier of the larger policy agreed to provide a larger amount of insurance, at a cost that presumably covered the risk to itself, and this court can see nothing unfair about expecting it to pay a larger share of the cost than the carrier of the smaller policy that insures on the same basis. The Pennsylvania legislature apparently considers pro rata apportionment to be the fairer approach and so does this court.

## III. DUTY TO DEFEND

■ The duty to defend and the duty to indemnify are independent of each other. *Liberty Mutual Ins. Co. v. Pacific Indem. Co.*, 557 F.Supp. 986, 988 (W.D.Pa.1983); *Brunner v. McCullough*, 216 F.Supp. 496, 499 (E.D.Pa.1963). Some courts have apportioned liability and defense costs among insurers by the same method and some courts have apportioned them by different methods. The court in *Transport Indemnity* mentions that one insurer in that case had the duty to defend because it was written into its primary coverage policy. 535 F.2d at 238. In the present case, in which both insurers have a contractual duty to defend, *Transport Indemnity* provides us with no guidance as to apportionment of defense costs between them.

Defense costs were apportioned differently from indemnity costs in another case from the Third Circuit, *Occidental Fire and Casualty Co. v. Brocious*, 772 F.2d 47 (3d Cir. 1985), which also applied Pennsylvania law. Like *Transport Indemnity* and the instant case, it was a declaratory judgment action involving different insurers. The insurer of a tractor-trailer involved in a fatal accident brought an action to determine its duty to defend and indemnify the buyer of the vehicle pursuant to a conditional sales contract. The court of appeals held that two policies providing excess coverage had to be exhausted before a residual umbrella policy would provide coverage.

In *Occidental*, the court apportioned liability costs between the two excess insurers on a

pro rata basis where no primary insurer covered the accident. Buckeye Union Insurance Company ("Buckeye") had issued two policies to the mining company that employed the driver of the truck. One, which had a limit of $1,000,000.00, provided only excess coverage when the covered vehicle was not owned by the mining company. The other policy had a limit of $20,000,000.00 and was an residual umbrella policy in excess of all other insurance. Another insurance company, Occidental Fire and Casualty Company of North Carolina ("Occidental"), had a $500,-000.00 excess liability policy covering the mining company. The court noted that the language of the Occidental policy and that of the Buckeye $1,000,000.00 policy both provided for proration of liability in proportion to the limits of liability of each policy. Buckeye's umbrella policy contained no such language. The court held that proration of the excess policies did not apply to the umbrella policy, which provided only residual coverage. Therefore the ratio in which Buckeye's and Occidental's costs stood was 2:1 rather than 42:1, which it would have been if the limits in Buckeye's two policies had been combined for purposes of calculating pro rata liability. The *Occidental* court quoted *Transport Indemnity* in its holding that when two policies provided excess coverage, the excess liability "must be prorated between the two carriers of excess insurance according to the limits in the policies."[7] 772 F.2d at 47, quoting 535 F.2d at 239.

While the district court in *Occidental* prorated the liability costs, it held that the defense costs were to be shared equally between the two insurers who were obligated to provide a defense. The court of appeals quoted from the district court's opinion in affirming it:

> Occidental ... and Buckeye ... each are under a legal obligation to provide [the driver] with coverage with each insurer's liability to be prorated according to the limits of its policy, or policies, with all costs, fees and expenses relative to the defense of [the driver] to be shared equally by and between the insurers.

772 F.2d at 54, n. 11. The district court's opinion in *Occidental* was not published, so we do not know the facts or the reasoning that led to the court's decision that the two insurers were to share defense costs equally, but the court of appeals opinion suggests that it was a matter of agreement or contract rather than decree. In its opinion, the court of appeals noted that Occidental "has conceded that if it is not completely absolved from liability, it is responsible for one-half of the defense costs of Brocious." 772 F.2d at 54, n. 12. Because of Occidental's concession, we cannot take this case as authority that defense costs should be apportioned equally among insurers where they do not so agree.

Continental relies on another opinion by the United States Court of Appeals for the Third Circuit, *Pacific Indem. Co. v. Linn,* 590 F.Supp. 643 (E.D.Pa.1984), *aff'd* 766 F.2d 754 (3d Cir.1985), in which the district court had to determine the defense and indemnity obligations of four insurers with respect to their common insured, Dr. Robert Linn.[8] The policies all contained different limits of liability, and only two of them covered the same risk.[9] 590 F.Supp. at 652. Plaintiffs in each of the underlying cases against Dr. Linn had alleged several theories of liability and more than one insurer was implicated in each case. In no case were only the two insurers who provided "other insurance" to each other implicated. Because all of the cases except one settled or resulted in a judgment for Dr. Linn, the court could not determine in individual cases the bases of liability and therefore could not allocate indemnity costs on the basis of risk covered. The district court

---

7. Because both insurers in *Occidental* had pro rata clauses in their policies, the case does not provide guidance for the apportionment of liability insurance in the instant case, where only one of the insurers included a pro rata clause and the other expressed no preference.

8. The suit asserted claims on behalf of persons who read Dr. Linn's book, The Last Chance Diet, followed the diet program that it recommended, and consequently suffered personal injury or death. 590 F.Supp. at 643.

9. As noted above, it is only if policies cover the same interest, the same subject matter and the same risk that they constitute "other insurance." *Blue Anchor Overall.*

developed complex formulae for calculating apportionment of indemnity, but dealt more simply with defense costs:

> Since the duty to defend is independent of liability and any limitations thereon, each insurer owing Dr. Linn a defense is required to contribute to costs of defense in equal shares with any other insurer also obligated to defend Dr. Linn.

590 F.Supp. at 654 (citations omitted). However, the court linked this apportionment of defense costs to the unique circumstances of the case; therefore it does not serve as a blanket guide to the apportionment of defense costs in Pennsylvania cases.[10]

In addition to the cases discussed above that apportion defense costs on an equal basis, Continental cites a number of cases from Pennsylvania courts of common pleas and federal courts applying Pennsylvania law that divide defense costs on an equal basis. In only two of the cases was it clear that the policy limits were different and that an equal apportionment and a pro rata apportionment of defense costs yielded different results. *Continental Casualty Co. v. Aetna Cas. & Sur. Co.*, 33 Pa.D. & C.2d 293 (Alleg. Co. 1963); *Horace Mann Ins. Co. v. CNA Ins. Co.*, 23 Pa.D. & C.3d 433 (Somerset Co., 1982). In two other court of common pleas cases Continental cites, the policy limits were not given, so that we do not know whether apportionment of defense costs was truly on the basis of equal shares. *Jett v. Hill* 10 Pa.D. & C.3d 734 (Phila. Co. 1978); *Harleysville Mutual Cas. Co. v. U.S. Fidelity and Guarantee Co.*, 27 Pa.D. & C.2d 544 (York Co. 1961). In two federal cases applying Pennsylvania law, the policy limits were the same or were not given, so the equal division of defense costs may or may not have been the result of the court's applying a principle of equal apportionment. *Liberty Mutual v. Pacific* (same policy limits); *Green v. Benson,* 271 F.Supp. 90 (E.D.Pa.1967) (policy limits not given).

Aetna argues for a pro rata apportionment of defense as well as liability costs, but it cites no Pennsylvania authority for its position on defense costs. Instead, it relies on a New York case, *Avondale Industries, Inc. v. Travelers Indem. Co.*, 774 F.Supp. 1416 (S.D.N.Y.1991). This court has found no case law binding it to apportion defense costs by one method rather than by another, and it finds persuasive the reasoning of the *Avondale* court. That court, applying New York law, criticized another federal decision that had applied New York law, *Atlantic Mutual Ins. Co. v. Truck Ins. Exchange,* 797 F.2d 1288 (5th Cir.1986). After noting that the *Atlantic Mutual* court had held that two insurers had to divide defense costs equally because they "had equal obligations to defend [their insured]" (774 F.Supp. at 1437, quoting 797 F.2d at 1296 n. 6), the *Avondale* court stated:

> Whatever the merits of the truism that because two insurers both have a "separate and equal" duty to defend, the dollar amounts for which they are liable when they are sharing the costs should be equal, we do not believe that result is compelled where indemnity costs are being split on a pro rata basis. The issue of whether two parties are each individually liable to a third party for the full amount of damages is distinct from how the dollar amount of damages should be apportioned between the two when both are contributing. While equal apportionment of defense costs is rational when indemnification liability is equally apportioned, it is not obvious that equal apportionment is logical when indemnification would be apportioned on a pro rata basis. On the contrary, the more workable and equitable approach would be for apportionment of defense costs to follow the method of apportionment of indemnification costs. As Travelers has argued in a different setting, "[d]efense dollars protect indemnity dollars ..." In the absence of a binding legal rationale or a compelling logical one, we

10. The district court said the following:
   It has not been determined under Pennsylvania law how defense costs are to be distributed between insurers. This distribution seems the most equitable *in view of the unique facts in-*
   *volved herein,* and the most likely result were the Pennsylvania courts to rule on this issue. 590 F.2d at 654, n. 15 (emphasis added) (citation omitted).

see no reason to encourage even greater complexity and confusion in multiple insurer coverage litigation by applying to one dispute between the same insurers different apportionment rules for indemnification payments and defense costs.

774 F.Supp. at 1437.

This court agrees that it is simpler and more logical to apply the same method of apportionment to both indemnity costs and defense costs. In the absence of binding authority or any clear indication in Pennsylvania law to the contrary, it will therefore apportion defense as well as liability costs on a pro rata basis in proportion to the policy limits of the two insurers.

## IV. CONCLUSIONS

For reasons stated above, including the Pennsylvania legislature's approval of the pro rata method of apportionment with regard to policy limits in another area of insurance, the decision of the United States Court of Appeals in *Transport Indemnity,* and persuasive authority cited, this court holds that the two insurers remaining in the case, both insuring Jefferson Duncan's accident on the same basis, shall share the indemnification and defense costs in proportion to their policy limits as those were found to be in this court's prior memorandum opinion dated February 22, 1993.