657 A.2d 1274

Grace A. HOFFMASTER, an Individual, and Keystone Insurance Company, a Corporation, Appellant,

v.

HARLEYSVILLE INSURANCE COMPANY, a Corporation, Blair Vilsack, an Individual, City of Pittsburgh, a Municipal Corporation, Bloomfield Italian Independent Club and Marlene Studeny and Gerald Studeny.

Superior Court of Pennsylvania.

Argued Jan. 24, 1995.

Filed April 25, 1995.

Sean P. Hannon, Pittsburgh, for appellant.

Keithley D. Mulvihill, Pittsburgh, for appellees.

Before ROWLEY, President Judge, and McEWEN and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order of March 16, 1994, entered in the Court of Common Pleas of Allegheny County, denying the motion for summary judgment filed by appellants, Grace Hoffmaster and Keystone Insurance Company ("Keystone"), and granting the motion for summary judgment filed by appellees, Blair Vilsack and Harleysville Insurance Company ("Harleysville").[1] Herein, we are presented with questions of first impression for a Pennsylvania appellate court: whether "other insurance" clauses provided by each automobile liability insurance policy containing virtually identical language should be disregarded as mutually repugnant thereby rendering each

---

1. On May 9, 1994, the order in question was reduced to judgment in favor of Harleysville and against Keystone for the amount of $10,-702.15.

insurer to share generally in the loss; and whether apportionment of the loss should be made equally or be prorated on the basis of the maximum coverage limit of each policy. Upon review, we affirm.

The case was submitted to the lower court on the following stipulated facts:

STIPULATED STATEMENT OF FACTS

This case arises out of an accident on June 13, 1986 at the intersection of Sapphire Way and Adeline Street in the City of Pittsburgh. A car owned by Blair Vilsack and driven by Grace Hoffmaster collided with a car driven by Marlene Studeny. Mr. Vilsack was insured under a policy issued by Harleysville Mutual Insurance Company with a liability limit of $100,000. Ms. Hoffmaster was insured under a policy issued by Keystone Insurance Company with a liability limit of $50,000.

Marlene Studeny filed a lawsuit against Grace Hoffmaster and Blair Vilsack. Without admitting liability, Harleysville paid $25,000 and Keystone paid $5,000 to Marlene Studeny in settlement of her claim.

Both the Harleysville and Keystone policies would provide coverage to Grace Hoffmaster as the driver of Blair Vilsack's car in the absence of any other applicable insurance. The two policies contain identical clauses which are set forth under the heading "Other Insurance" and state:

If there is other applicable insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Copies of the clauses from the Harleysville and Keystone policies are attached and marked Exhibits A and B.[2]

R.11.

On June 17, 1991, Keystone filed a complaint in a declaratory judgment action against Harleysville seeking indemnity and

2. Harleysville's "Other Insurance" clause provides:

defense costs incurred by Keystone in the lawsuit between Marlene Studeny and Grace Hoffmaster. R.1. Thereafter, both Harleysville and Keystone filed cross-motions for summary judgment. R.10–13. On March 16, 1994, the court below entered a memorandum opinion and order denying Keystone's motion for summary judgment and granting Harleysville's motion for summary judgment. The lower court rejected Keystone's argument that the two policies be read congruently so that Keystone would be deemed an excess insurer and Harleysville a primary insurer. Instead, the lower court found that the "Other Insurance" clauses were mutually repugnant and held each insurer to share equally in indemnity and defense costs. Trial Opinion 3/16/94 at 3–4. This timely appeal ensued.

Keystone poses the following issues for our review:

1. Whether the plain language of identical "Other Insurance" clauses, based upon facts in this case, can be read in conjunction to determine primary and excess liability as between insurance companies.

2. Assuming that the defense and indemnification must be shared on a pro rata basis, whether each insurance company should pay equally despite different liability limits in each policy.

Appellant's Brief at 2.

 "The proper construction of a policy of insurance is a matter of law which may properly be resolved by a court pursuant to a motion for summary judgment." *Fisher v.*

> If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.
> R.11.
> Keystone's "Other Insurance" clause reads:
> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.
> R.11.

*Harleysville Ins. Co.,* 423 Pa.Super. 362, 365, 621 A.2d 158, 159 (1993), *citing, Steinbacher v. Page,* 410 Pa.Super. 586, 588, 600 A.2d 608, 609 (1991); *Vale Chem. Co. v. Hartford Accident & Indem. Co.,* 340 Pa.Super. 510, 516 n. 4, 490 A.2d 896, 899 n. 4 (1985), *rev'd on other grounds,* 512 Pa. 290, 516 A.2d 684 (1986). Summary judgment may only be entered where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Fisher,* 423 Pa.Super. at 363–65, 621 A.2d at 159; Pa.R.Civ.P. 1035(b), 42 Pa.C.S.A. An appellate court may disturb a trial court's entry of summary judgment only where there has been an error of law or clear abuse of discretion. *DeWeese v. Anchor Hocking Consumer And Industrial Products Group,* 427 Pa.Super. 47, 50–52, 628 A.2d 421, 423 (1993); *Dibble v. Security of America Life Ins. Co.,* 404 Pa.Super. 205, 207–09, 590 A.2d 352, 353 (1991).

■ Guided by the aforementioned standard of review, we proceed in addressing the merits of Keystone's claims. Initially, we note that there are three general categories of "other insurance" clauses which determine how liability is to be assigned when multiple coverage exists. "The first, a 'pro-rata' clause, limits the liability of an insurer to a proportion of the total loss. The second, an 'escape' clause, seeks to avoid all liability. The third, an 'excess' clause . . . provides that the insurance will only be excess." *Carriers Ins. Co. v. American Policyholders' Ins. Co.,* 404 A.2d 216, 218 (Me.1979). *See Western Cas. & Sur. v. Universal Underwriters,* 232 Kan. 606, 609–12, 657 P.2d 576, 579–80 (1983); 7A Am.Jur.2d Automobile Insurance § 434 (2d ed. 1980).

Here, the policies provided by Keystone and Harleysville each have "pro-rata" and "excess" clauses. *The parties have stipulated that the language of those clauses is identical.* Keystone asserts that although the "Other Insurance" clauses are identical, they do not conflict when properly interpreted as the insurers intended. Keystone maintains that a construction of both policies, in light of the facts of this case, reveals that the parties intended Keystone to provide excess insurance and Harleysville, primary insurance. Keystone directs

our court's attention to the definition of "you" stated in both policies to buttress its argument that only Keystone intended to provide excess insurance to Grace Hoffmaster.

We note that Keystone's brief in support of its motion for summary judgment, which was presented to the lower court, does not mention how the definition of "you" affects the construction of the "Other Insurance" clauses, and the court below did not address this claim. R.11, 14.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a), 42 Pa.C.S.A. *See Kryeski v. Schott Glass Technologies, Inc.*, 426 Pa.Super. 105, 626 A.2d 595 (1993).

Consequently, we find as waived appellant's argument that the policies' definitions control the question of which insurer provides primary coverage.

Even if review of the policies' definitions were appropriate at this juncture, we decline to delve into such semantic microscopy. "It merely encourages the continuing draftsmanship battle by which insurers seek still more specific policy terms, and the end is not in sight." *Carriers Ins. Co.*, 404 A.2d at 219, *quoting*, Note, *Concurrent Coverage in Automobile Liability Insurance*, 65 Colum.L.Rev. 319 (1965). "The question of whether the particular insurance is primary or excess is not a public matter but merely a concern of the insurance companies which have extended coverage to the risk." *Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.*, 28 N.J. 554, 563, 147 A.2d 529, 534 (1959) (citations omitted). We wholeheartedly embrace the following reasoning articulated by the Supreme Judicial Court of Maine in *Carriers Ins. Co.*, 404 A.2d at 220:

> We perceive no methodology which is neither arbitrary nor utterly mechanical by which we could rationally resolve the enigma of which policy should be given effect over the other. Both clauses attempt to occupy the same legal status. Any construction this Court renders should attempt to maintain the status quo. This goal can be achieved only by abandoning the search for the mythical "primary" insurer and insisting instead that both insurers share in the loss.

Such an approach best carries out the intent of the insurers which was to reduce or limit their liability.

We are of the opinion that the Supreme Court of Pennsylvania would subscribe to the rule shared by the vast majority of courts from other jurisdictions. That rule provides that irreconcilable "other insurance" clauses in automobile liability insurance policies are to be disregarded as mutually repugnant thereby rendering each of the coverages to be treated as primary insurance. *See Universal Underwriters Ins. Co. v. Allstate Ins. Co.*, 99 Md.App. 595, 602–04, 638 A.2d 1220, 1224 (1994).

"[I]f literal effect were given to both 'excess insurance' clauses of the applicable policies, neither policy would cover the loss and such a result would produce an unintended absurdity." 7A Am.Jur.2d Automobile Insurance § 434, pp. 87–88. "[A]ny attempt to give effect to the 'other insurance' provision of one policy while rejecting it in another is like pursuing a will o' the wisp." *Lamb–Weston, Inc. v. Oregon Automobile Ins. Co.*, 219 Or. 110, 122, 341 P.2d 110, 115–116 (1959). "[W]here the clause in each policy ... attempts to make its own liability secondary to that of any other policy issued by a similar primary insurer: For then the primary and (attempted) secondary liability of each policy chase the other through infinity, something like trying to answer the question: Which came first, the chicken or the egg?" *Carriers Ins. Co.*, 404 A.2d at 219, *quoting, State Farm Mutual Ins. Co. v. Travelers Ins. Co.*, 184 So.2d 750, 753–54 (La.App.1966). "[T]hey cannot be excess to each other, since they are identical. It is sort of 'After you Alfonse; no you, Gaston' act which the courts refuse to countenance." *Western Cas. & Sur.*, 232 Kan. at 611, 657 P.2d at 580, *quoting, 8A* Appleman, Insurance Law and Practice § 4909 (rev.1981). *See Horace Mann Ins. Co. v. Colonial Penn Ins. Co.*, 777 P.2d 1162 (Alaska 1989); *State Farm Mut. Auto. Ins. Co. v. Bogart*, 149 Ariz. 145, 717 P.2d 449 (1986); *Argonaut Ins. Co. v. Transport Indem. Co.*, 6 Cal.3d 496, 99 Cal.Rptr. 617, 492 P.2d 673 (1972); *Allstate Ins. Co. v. Frank B. Hall & Co. of California*, 770 P.2d 1342 (Colo.App.1989); *Liberty Mut. Ins. Co. v. Fireman's Fund*

*Ins. Co.*, 479 A.2d 289 (Del.1983); *Allstate Ins. Co. v. Executive Car and Truck Leasing, Inc.*, 494 So.2d 487 (Fla.1986); *Continental Cas. Co. v. New Amsterdam Cas. Co.*, 28 Ill. App.2d 489, 171 N.E.2d 406 (1960); *United Services Automobile Assoc. v. American Interinsurance Exchange*, 416 N.E.2d 875 (Ind.Ct.App.1981); *Aid Ins. Co. v. United Fire & Cas. Co.*, 445 N.W.2d 767 (Iowa 1989); *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 594 S.W.2d 950 (Mo.App. 1980); *CC Housing Corp. v. Ryder Truck Rental, Inc.*, 106 N.M. 577, 746 P.2d 1109 (1987); *American Home Assur. Co. v. Hartford Ins. Co.*, 74 A.D.2d 224, 427 N.Y.S.2d 26 (1st Dept. 1980); *Buckeye Union Ins. Co. v. State Auto Mut. Ins. Co.*, 49 Ohio St.2d 213, 361 N.E.2d 1052 (1977).

█ Having concluded that both insurers are to share generally in the loss, we now turn to the question of how that loss should be apportioned between the insurers. As noted by the Supreme Court of Washington in *Mission Ins. Co. v. Allendale Mut. Ins. Co.*, 95 Wash.2d 464, 465–66, 626 P.2d 505, 506 (1981), three approaches have been adopted by courts in resolving this issue.

(1) Policy Limit. Under this rule, the total loss is prorated on the basis of the maximum coverage limits of each policy. *Buckeye Union Ins. Co. v. State Auto Mut. Ins. Co.*, 49 Ohio St.2d 213, 361 N.E.2d 1052 (1977); (2) Maximum Loss. The loss is prorated based upon the maximum loss which each insurer standing alone would incur in the particular incident. *Ruan Trans. Corp. v. Truck Rentals, Inc.*, 278 F.Supp. 692 (D.Colo.1968); (3) Premiums Paid. The loss is prorated in proportion to the premiums paid. *Insurance Co. v. Employers Liab. Assurance Corp.*, 163 F.Supp. 143 (S.D.Cal.1958); *see Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.*, 28 N.J. 554, 147 A.2d 529, 69 A.L.R.2d 1115 (1959).

Of these approaches, policy limit appears to be the older and majority rule, maximum loss is the minority but emerging rule, while premiums paid has been nearly universally discarded.

*See Continental Ins. Co. v. McKain,* 821 F.Supp. 1084, 1086 (E.D.Pa.1993).

Keystone contends that Pennsylvania courts should follow the majority rule which apportions the loss in accordance to each insurer's respective policy limit. Keystone's policy limit is $50,000.00, and Harleysville's policy limit is $100,000.00. Keystone takes the position that its apportionment of loss should be one-third ($50,000.00/$150,000.00), and that Harleysville's should be two-thirds ($100,000.00/$150,000.00). In Marlene Studeny's lawsuit against Grace Hoffmaster and Blair Vilsack, the amount of loss was $30,000.00. Keystone argues that under the rule of policy limit, its apportionment of the loss is $10,000.00, and Harleysville's is $20,000.00.

On the other hand, Harleysville asserts that Pennsylvania courts should adopt the minority rule (maximum loss approach) which prorates the loss equally up to the limits of the lower policy. Harleysville maintains that each insurer's apportionment of loss is $15,000.00.

Keystone advances the following three reasons to support its claim that the majority rule of apportionment is proper in the instant case: (1) The "Other Insurance" clause of each policy expressly provides for proration in accordance to the rule of policy limit. (2) The Pennsylvania legislature favors proration based upon each insurer's respective policy limit. (3) The rationale underlying this method of apportionment of loss is sounder than the minority approach.

Keystone relies upon the opinion of the United States District Court for the Eastern District of Pennsylvania in *Continental Ins. Co. v. McKain,* 821 F.Supp. 1084 (E.D.Pa. 1993), to argue initially that the precise language of the policies controls the method of apportionment. In *McKain,* the court noted that the language of policies as to apportionment is often determinative. *Id.* at 1087. "Where both relevant policies contained language favoring a particular principle of apportionment, the court applied it." *Id., citing, Occidental Fire and Cas. Co. v. Brocious,* 772 F.2d 47 (3d Cir.1985); *Liberty Mut. Ins. Co. v. Home Ins. Co.,* 583

F.Supp. 849 (W.D.Pa.1984). There, the court was presented with two insurance policies which contained "other insurance" clauses. One policy showed a clear preference for proration in accordance to each insurer's respective policy limit. The second policy showed no preference as to the method of apportionment. *Id.* at 1087–1088. Because the latter policy did not state a preference, the court determined that the language of the policies did not control the question of apportionment in that case. *Id.* at 1088. However, the court concluded that the majority rule applied rather than the minority rule (maximum loss approach) on the grounds that the Pennsylvania legislature favored the former and that the reasoning behind this method of apportionment was more persuasive. *Id.* at 1089–1090.

In the case at bar, both policies provide for apportionment on the basis of the maximum coverage limit of each policy. The "Other Insurance" clauses state, "Our share is the proportion that our limit of liability bears to the total of all applicable limits." R.11. However, since we construe the "Other Insurance" clauses as irreconcilable, they are repugnant and each is rejected in *toto*. *See Lamb–Weston, Inc.*, 219 Or. at 121, 341 P.2d at 119 (irreconcilable "other insurance" clauses, regardless of nature of clause, were repugnant and each was rejected in *toto* ); *United Services Auto. Assoc. v. American Interinsurance Exchange*, 416 N.E.2d 875, 878–879 (Ind.Ct.App.1981) (same). In light of our finding that the clauses are to be disregarded because they are mutually repugnant, we are not inclined to rely upon the language of the clauses to determine the proper method of apportionment. Moreover, we are of the opinion that courts ought not effectuate the language in irreconcilable "Other Insurance" clauses *for the simple reason that the policies are not agreements between the insurers.* As keenly noted by the Supreme Court of Oregon in *Lamb–Weston, Inc.*, 219 Or. at 124–26, 341 P.2d at 117, *quoting, American Auto. Ins. Co. v. Seaboard Surety Co.*, 155 Cal.App.2d 192, 318 P.2d 84, 86 (1958).

[T]heir agreements are not with each other. *See Offer v. Superior Court*, 194 Cal. 114, 118, 228 P. 11 [ (1924) ];

*Fireman's Fund Ins., Co. v. Palatine Ins. Co.,* 150 Cal. 252, 256, 88 P. 907 [ (1907) ]. Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders. The Minnesota Supreme Court, dealing with policies covering two insured persons whose liability for an accident was primary and secondary between themselves, said in *Commercial Casualty Ins. Co. v. Hartford Accident & Indemnity Co.,* 190 Minn. 528, 252 N.W. 434, 435, 253 N.W. 888: "The two contracts of insurance and their interpretation must be the factual basis of decision. But there was no contract and so no contractual relation between the insurers. Neither was beneficiary of the other's contract. Neither having any contract right against the other, but both being under contractual obligations in respect to the same risk, it remains only to determine the respective equities. If they are concurrently liable for the same risk, it is but obvious equity that there should be contribution."

Consequently, we reject Keystone's contention that the language provided in "other insurance" clauses is determinative of which method of apportionment a court ought to apply.

▮ We next address Keystone's assertion that the Pennsylvania legislature favors proration based upon each insurer's respective policy limit. In *McKain, supra,* 821 F.Supp. 1084 the federal district court evaluated the following clause entitled, "Pro rata liability" under a statute promulgated by the General Assembly which concerns coverages for *fire insurance:* "This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not." 40 Pa.Stat.Ann. § 636(2). The court recognized that the Pennsylvania legislature did not promulgate a similar requirement with regard to other types of insurance. Nevertheless, the court was convinced that the legislature preferred apportionment based

upon policy limits over the minority rule for other types of insurance since the legislature specifically opted for the former approach in enacting 40 Pa.Stat.Ann. § 636(2). *Id.* at 1087, 1090.

We agree with the federal court's finding in *McKain, supra,* 821 F.Supp. 1084, that the Pennsylvania legislature did not promulgate a provision regarding apportionment in coverages for automobile liability insurance.[3] However, we depart from

3. We are mindful of Pennsylvania appellate court decisions that have addressed the question of apportionment in insurance coverages in contexts distinguishable from the instant case. *See Vrabel v. Scholler,* 369 Pa. 235, 85 A.2d 858 (1952) (*Vrabel I*), appeal after remand, 372 Pa. 578, 94 A.2d 748 (1953) (*Vrabel II*); *Fireman's Fund Ins. Co. v. Nationwide Mutual Ins. Co.,* 317 Pa.Super. 497, 464 A.2d 431 (1983). In those cases, unlike here, the clauses provided in the policies were not deemed by the courts to be irreconcilable with each other and disregarded as mutually repugnant. In *Fireman's Fund Ins. Co., supra,* the clauses at issue involved insurance coverages for first-party benefits not liability. In that case, and in the *Vrabel* decisions, the courts found that the existing statutes, i.e. "No–Fault Motor Vehicle Insurance" 40 P.S. §§ 1009.101 to 1009.701 (repealed), offered no guidance on any particular method of proration. The courts then concluded that apportionment ought to be determined according to the express terms of the policies. *See Fireman's Fund Ins.,* 317 Pa.Super. at 509–13, 464 A.2d at 438–39; *Vrabel,* 369 Pa. at 240–44, 85 A.2d at 861–62. In *Fireman's Fund Ins.* our court was not able to effectuate the language of the policies with respect to apportionment because the relevant clauses were not included in the record for evaluation. Our court remanded the case for further proceedings consistent with the following instructions:

It may be that both policies contain language similar to that in the model clause prescribed by the Commissioner [31 Pa.Code § 66.102(e), Condition H]. If so, that language should be followed. If there is a conflict between the language of the policies, that conflict should first be resolved in the trial court by reference to the language contained in the policies. *If the clauses are irreconcilable, they should be disregarded as mutually repugnant and the common law rule of Vrabel I and Vrabel II applied, i.e. the policy-limits ratio. If that common law rule is to be altered, it should be done only after careful consideration and reflection, with due regard for the uniformity, coherence, simplicity and certainty of the No–Fault system of insurance desired by the legislature.*

317 Pa.Super. at 512, 464 A.2d at 439 (citations omitted) (emphasis added).

Because our court did not conclude that the clauses at issue in *Fireman's Fund Ins., supra,* were irreconcilable, we find our panel's decision which favored application of the policy limit rule is dictum and not binding upon us herein. Our research reveals that our supreme court has not evaluated the reasoning behind the majority rule in relation with the minority rule (maximum loss approach). Under the

the federal court's determination in *McKain, supra,* 821 F.Supp. 1084, that the legislature would necessarily apply the same method of proration for both fire insurance and automobile liability insurance. *Compare Richardson v. Jones,* 551 F.2d 918 (3d Cir.1977) (omission of provision from similar statute was significant to show a different intent existed).

Although "pro rata" generally means a division of loss in proportion to policy limits (policy limit approach), it may also mean apportionment by equal shares (maximum loss approach). Windt, Insurance Claims and Disputes § 7.04 (1988). Upon review, we do not construe "Pro rata liability" under 40 Pa.Stat.Ann. § 636(2) to only mean apportionment under the policy limit approach. That provision is broad in its language and could also be interpreted as apportionment based upon the maximum loss approach.

Upon examination of the rationales underlying the methods of apportionment, the court in *McKain, supra,* 821 F.Supp. 1084, determined that the majority rule for apportionment was more convincing. The court reasoned as follows:

> Despite the majority rule in favor of pro rata apportionment when two carriers provide coverage on the same basis, insurance companies have continued to provide significant amounts of excess insurance at low cost. Their calculation of the overall cost of providing such insurance will have included the financial consequences of the fact that, in the majority of jurisdictions, they have been required to contribute pro rata when their high coverage policies have provided "other insurance" to policies with lower limits. Assuming that insurance companies have adjusted their practices to the majority rule (rather than expecting the majority rule to adjust to their practices, as Continental [appellant] seems to suggest), then equal shares apportionment will provide

circumstances of this case, we are of the opinion that our supreme court would join the growing number of courts and apply the maximum loss method where "other insurance" clauses are disregarded as mutually repugnant.

"something of a windfall to the insurer with the higher limits, . . ." Windt at § 403.

*Id.* 821 F.Supp. at 1089.

Contrarily, courts following the maximum loss approach have found that the majority rule of apportionment is inequitable to the insurer which provides the larger policy. *See Liberty Mutual Ins. Co. v. Fireman's Fund Ins. Co.*, 479 A.2d 289 (Del.1983); *Western Cas. & Sur. v. Universal Underwriters*, 232 Kan. 606, 657 P.2d 576 (1983); *Universal Underwriters Ins. Co. v. Allstate Insur. Co.*, 99 Md.App. 595, 638 A.2d 1220 (1994); *Cosmopolitan Mutual Ins. Co. v. Continental Casualty Co.*, 28 N.J. 554, 147 A.2d 529 (1959); *Mission Ins. Co. v. Allendale Mutual Ins. Co.*, 95 Wash.2d 464, 626 P.2d 505 (1981). In *Carriers Ins. Co.*, 404 A.2d at 221–22, the Supreme Judicial Court of Maine determined that the rationale behind the maximum loss approach was much sounder than that of the policy limit method:

> [T]he majority rule has been criticized since "it is commonly known that the cost of liability insurance does not increase proportionately with the policy limits." *Cosmopolitan Mutual Insurance Company v. Continental Casualty Co., supra* note 4 at 564, 147 A.2d at 534. Once minimum coverage has been obtained, significant supplemental coverage can be provided at only a modest increase in cost. . . .
>
> The minority rule adopted by the presiding Justice utilizes the best aspects of both approaches without the limitations. Like the majority rule, it is easy to administer. It would simply require each company to contribute equally until the limits of the smaller policy were exhausted, with any remaining portion of the loss then being paid from the larger policy up to its limits. *Nationwide Mutual Insurance Company v. State Farm Mutual Automobile Insurance Company*, [209 F.Supp. 83 (N.D.W.Va.1962) ] *supra; Dairyland Insurance Company v. Drum*, 193 Colo. 519, 568 P.2d 459, 464 (Colo.1977) (Carrigan, J., dissenting in part).
>
> Unlike the majority rule, this Solomon-like approach comports with a most basic sense of justice. *See* Exodus, ch. 21, par. 35 ("When one man's ox hurts another's ox so badly

that it dies, they shall sell the live ox and divide this money as well as the dead animal they shall divide equally between them.") Moreover, the majority rule unfairly discriminates against the larger policy by apportioning the loss in proportion to the respective policy limits, utterly forgetting that both insurers, by their contracts, have in fact agreed to cover a loss up to the limits of the lesser policy. Until that point is reached, the majority rule amounts to no more than an unacceptable subsidy from the high-coverage to the low-coverage carrier. We are in complete accord with the presiding Justice when he adopted the persuasive opinion of Judge Doyle in *Ruan Transport Corp. v. Truck Rentals, Inc.*, [278 F.Supp. *supra* note 7, 692 at 696 (D.Colo.1968) ].

"The majority method of prorating operates inequitably in its differentiating treatment of the high-loss and low-loss insurer. In return for a greater premium the insurer providing higher coverage has undertaken to protect the insured against accidents involving high losses. Yet because of this undertaking to protect against high loss the larger insurer is in an unfavorable position vis-a-vis the other insurer even in cases of low loss, since under the majority method of prorating the insurer affording the greater maximum coverage pays the greater segment of any loss incurred, regardless of the amount of the loss. This seems inequitable since both insurers have equally undertaken to insure against the low-loss accident."

The majority rule would hardly encourage an insurer from increasing its coverage where it is aware that there is a lesser policy. It would increase the insurer's potential liability not only in the high-risk situation which additional premiums are presumably meant to recompense, but it would have the untoward effect of increasing liability in the more likely to occur low-risk situation. Carried to its extreme, it would further increase the cost of additional insurance thereby reducing the likelihood that an insured would choose such coverage. *See Dairyland Insurance Company v. Drum, supra,* (Carrigan, J., dissenting in part).

The Court would be reluctant to adopt a rule which would seemingly have little social utility.[4]

Herein, our court finds the aforementioned analysis of the Maine court to be more persuasive than that of courts clinging to the majority rule. Although neither rule is perfect, we are of the opinion that the maximum loss approach affords more equitable treatment to insurers. *See Mission Ins. Co.*, 95 Wash.2d at 466–68, 626 P.2d at 507 (Supreme Court of Washington adopts maximum loss rule and overrules its prior decisions wherein policy limit rule was approved).

Because the "other insurance" clauses in the case at bar are irreconcilable, they are repugnant and each is rejected in *toto*. Without any guidance from our legislature on which method of apportionment applies to *automobile* liability insurance, we hold that Pennsylvania law requires application of the maximum loss method rather than the policy limit method. The court below properly ruled that each insurer was to share equally in the losses. Accordingly, the lower court did not commit an error of law nor an abuse of discretion in denying the motion for summary judgment filed by appellants, Keystone and Grace Hoffmaster, and granting the motion for summary judgment filed by appellees, Harleysville and Blair Vilsack.

Order affirmed.

---

4. In *Carriers Ins. Co., supra,* the policies at issue provided limits of $2,990,000.00 and $250,000.00, respectively. Despite that tremendous disparity in coverages, the Supreme Judicial Court of Maine rejected the majority rule of apportionment.